DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Champion Food Service, LLC, | ) | CASE NO. 1:13-cv-01195 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Vista Food Exchange, et al. | ) | |
| | ) | |
| Defendants. | ) | |

Pending before this Court is Defendant Joshua Newman's 12(b)(2) motion to dismiss for lack of personal jurisdiction. R. 13. Plaintiff opposed the motion (R. 26) and Defendant replied (R. 32). For the following reasons, Defendant's motion is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Champion Foodservice, LLC ("Champion") filed the First Amended Complaint on May 2, 2013, in the Court of Common Pleas of Crawford County, Ohio. Complaint R. 1-1, PageID#: 7. The action names Matthew Gibson ("Gibson"), Innovative Food Service, LLC ("Innovative"), Vista Food Exchange ("Vista"), and Joshua Newman ("Newman"), a resident of California, as Defendants. *Id.* Notice of Removal was filed May 29, 2013. R. 1.

As it relates to the justification for jurisdiction, Plaintiff's allegations are as follows. Champion hired Matthew Gibson as its President and CEO who was "responsible for preparing Champion's bid proposal to" the Ohio Association of Foodbanks ("OAF"), "which was due on March 1, 2013." Complaint, R. 1-1, ¶ 6, 11. However, on February 26, 2013, Mr. Gibson

(1:13-cv-01195)

"abruptly and without notice terminated his employment with Champion." *Id*. ¶ 12. On February

28, 2013, "Champion contacted Defendant Newman," an employee acting on behalf of Vista,

"and inquired specifically as to whether Vista was working with Gibson on a bid." *Id.* ¶ 16.

Newman told Champion he was not working with Gibson. *Id.* In reality, Newman (who

held himself out to be "Division Sales Manager" of "Vista Food Exchange Ohio") and Gibson

(who held himself out to be "Director of Sales & Marketing" at Vista), on behalf of Vista,

submitted a bid to the OAF program, which Champion alleges utilized Champion's trade secrets.

R. 26-3, PageID#: 346. All Defendants acted in concert and were "aware that Gibson possessed

[Champion's] confidential trade secrets and proprietary information" and colluded to use this

information for Vista to submits its own OAF bid at the expense of Champion. R. 1-1, ¶ 22, 24.

Champion alleges Gibson refused to return a laptop computer provided to him by

Champion to use "while he served as the President and [CEO] of Champion." *Id.* ¶¶ 7, 13, 14.

After the complaint was filed, Gibson, "acting for himself and on behalf of all Defendants . . .

intentionally 'wiped' the computer memory and hard drive, thereby erasing all data related not

only to Champion's business operations, but also related to Defendants' wrongful actions

evidencing Champion's claims in this lawsuit against them." *Id.* ¶ 27.

## DEFENDANT'S MOTION

Defendant's 12(b)(2) motion argues (1) the fiduciary shield doctrine protects Newman

from jurisdiction, (2) Ohio's long-arm statute does not authorize jurisdiction over Newman, and

(3) exercising jurisdiction over Newman violates due process. Plaintiff Champion responds that

(1) the fiduciary shield doctrine does not apply to Defendant, and his actions extend beyond

2

(1:13-cv-01195)

actions taken in his official capacity, (2) Ohio's long-arm statute provides four separate grounds

for jurisdiction, and (3) exercising jurisdiction over Newman does not violate due process. *See*

R. 26. Defendant in his reply contends Plaintiff has failed to establish jurisdiction under the four

separate grounds of the long-arm statute, and reasserts his fiduciary shield defense and

constitutional due process objection to jurisdiction. *See* R. 32.

**LAW**

In overcoming a 12(b)(2) motion, the "plaintiff bears the burden of establishing the

existence of jurisdiction." *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544,

549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.

1989)). But when a district court "relies solely on written submissions and affidavits . . . the

burden on the plaintiff is 'relatively slight.'" *Id.* (internal quotations, citation omitted). In

determining whether a plaintiff has set out a *prima facie* case that jurisdiction is appropriate, "the

pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and

the district court should not weigh 'the controverting assertions of the party seeking dismissal.'"

*Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

"In analyzing personal jurisdiction in diversity actions . . . federal courts must look to the

law of the forum state to determine the reach of the district court's personal jurisdiction over

parties, subject to constitutional due process requirements." *Air Products*, 503 F.3d at 550. A

district court must engage in a two-part inquiry. First, the court must analyze whether the forum

state's "long-arm statute[] authorize[s] the exercise of jurisdiction over Defendant[]." *Id.* Next,

3

(1:13-cv-01195)

"the court must determine whether exercise of that jurisdiction comports with constitutional due process." *Id.*

Ohio's long-arm statute provides, in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (2) Contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
>
> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity[;]
>
> (8) Having an interest in, using, or possessing real property in this state; [and]
>
> (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

OHIO REV. CODE § 2307.382.

4

(1:13-cv-01195)

"Due process requires that the defendant be given adequate notice of the suit."

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A court may exercise

"personal jurisdiction over a nonresident defendant only so long as there exist 'minimum

contacts' between the defendant and the forum State." *Id.* (citing *Int'l Shoe Co. v. Washington*,

326 U.S. 310, 316 (1945)). "The relationship between the defendant and the forum must be such

that it is 'reasonable . . . to require [defendant] to defend the particular suit which is brought

there.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 317).

In light of Supreme Court precedent, the Sixth Circuit has articulated a three-part test to

determine whether specific personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing a consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of jurisdiction over
> the defendant reasonable.

*Air Products*, 503 F.3d at 550 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381

(6th Cir. 1968)). "It is often repeated that the first prong—purposeful availment—is the '*sine qua*

*non* for *in personam* jurisdiction.'" *Id.* (quoting *S. Mach.*, 401 F.2d at 381–82.).

The fiduciary shield doctrine limits the exercise of jurisdiction over out-of-state corporate

officers. "In general, the fiduciary shield doctrine provides that corporate employees performing

acts in their corporate capacity are not subject to the personal jurisdiction of a court for such

acts." *Heritage Funding & Leasing Co. v. Phee*, 120 Ohio App.3d 422, 430 (10th Dist. Ct. App.

1997) (citation omitted). As stated by the Circuit, the doctrine holds that "jurisdiction over the

individual officers of a corporation cannot be predicated merely upon jurisdiction over the

(1:13-cv-01195)

corporation." *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).

But "there are exceptions to the doctrine, and a corporate agent may be held personally liable for torts committed in the corporate capacity." *Heritage Funding*, 120 Ohio App.3d at 430. For example, "Ohio law recognizes that corporate officers may be liable in their individual capacity for acts of fraud." *Id.* "[T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics*, 204 F.3d at 698.

## ANALYSIS

Defendant Newman argues the fiduciary shield doctrine protects him from jurisdiction because "[a]t all times pertinent to this controversy, Newman was acting on behalf of his employer Vista." R. 13, PageID#: 187. Newman is employed by Vista as "Division Sales Manager" of "Vista Food Exchange Ohio." R. 26-3, PageID#: 346. But it is clear from the holdings of Ohio courts as well as the Sixth Circuit that jurisdiction over corporate officers is proper where the plaintiff alleges the corporate officer himself has engaged in tortious conduct. *See Balance Dynamics*, 204 F.3d at 698; *see also Heritage Funding*, 120 Ohio App.3d at 430; *see also Centennial Ins. Co. v. Tanny Int'l*, 46 Ohio App.2d 137, 141 (6th Dist. Ct. App. 1975). "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether []he purposely availed h[im]self of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics*, 204 F.3d at 698.

6

(1:13-cv-01195)

Since Plaintiff alleges Newman was personally involved with the alleged torts, including fraud, in the course of his employment with Vista as sales manager (*see*, e.g., R. 1-1, ¶¶ 5, 16-20, 22, 24, 27, 44, 49, 54), the Court finds Newman is not protected from jurisdiction by the fiduciary shield.  *See Balance Dynamics*, 204 F.3d at 698; *see also Heritage Funding*, 120 Ohio App.3d at 430.

Defendant also argues jurisdiction does not exist under Ohio's long-arm statute. *See* R. 13, PageID#: 187. Defendant Newman references the affidavit attached as an exhibit to his 12(b)(2) motion wherein he avers "I have not personally transacted business in the State of Ohio"; "I have not personally contracted to supply goods or services in the State of Ohio"; and "I have not acted to cause tortious injury to anyone in the State of Ohio by an act done outside the State of Ohio and do not derive substantial revenue from supplying goods or services in the State of Ohio." R. 13-1, PageID#: 191. As such, Newman argues, jurisdiction under Ohio's long-arm statute is improper. *See* R. 13, PageID#: 187. Finally, Newman asserts the requirements of due process are not met because Newman did not purposely avail himself to the privilege of acting or causing a consequence in Ohio, and therefore jurisdiction over him is not reasonable. *See id.* at PageID#: 188.

Plaintiff counters by arguing that four provisions of the Ohio long-arm statute provide a basis for jurisdiction. These are related to Newman's (1) "[t]ransacting any business in this state"; (3) "[c]ausing tortious injury by an act or omission in this state"; (4) "[c]ausing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue

7

(1:13-cv-01195)

from goods used or consumed or services rendered in this state"; and (6) "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." R. 26, PageID#: 327 (citing OHIO REV. CODE § 2307.382(A)(1), (3), (4), (6)).

Plaintiff asserts that Newman, working with Defendant Gibson, submitted an unsolicited bid to the Ohio food program. R. 26, PageID#: 328. Additionally, Plaintiff points to Vista's 2013 bid to the Ohio food program which lists Defendant Newman "as the division sales manager of the Ohio Division of Vista Food Exchange." *Id.* at PageID#: 328-29. Champion also asserts Newman traveled to Ohio in relation to the OAF program. *Id.* at PageID#: 329.

Additionally, Champion claims Newman "transacted business in Ohio both on behalf of Vista and personally apart and separate from his employment with Vista." *Id.* Champion asserts "Newman placed an order for lunch kits totaling $6,660.86" in spring 2011. *Id.* at PageID#: 321. Finally, Champion points to the allegations of the complaint which "are tortious in nature and were done with full knowledge that the misappropriation of Champion's trade secrets would cause serious injury to Champion, an Ohio corporation, and were intentional wrongful acts committed for the purpose of destroying Champion's business." *Id.* at PageID#: 331.

Thus, Champion concludes Newman's business in connection with the OAF food program, as well as his personal transactions with Champion, establishes jurisdiction under (A)(1). *Id.* at PageID#: 329. Champion also argues Newman's travels to Ohio in connection with the 2013 OAF contract confer jurisdiction under (A)(3). *Id.* at PageID#: 330. Next, Champion

8

(1:13-cv-01195)

contends that, because Newman "regularly does or solicits business" in Ohio and allegedly

caused "tortious injury in this state by an act or omission out this state," jurisdiction exists under

(A)(4). *Id.* Finally, Champion asserts Ohio's long-arm statute confers jurisdiction under (A)(6)

because the allegations of Newman's misappropriation of trade secrets resulted in a tortious

injury, and "were done with full knowledge that the misappropriation of" these secrets would

cause injury in Ohio. *Id.* at PageID#: 331.

Defendant's reply argues that Newman's travels to Lott Industries in Ohio are not a basis

for jurisdiction because "Lott Industries is not a party to this action and this lawsuit by

Champion does not arise from a business transaction between the parties concerning the

obligations these parties have to each other pursuant to the transaction." R. 32, PageID#: 686.

Newman also argues that the allegedly personal transaction between Champion and Newman

"occurred some two and a half years before the events at issue in this case" and that "Champion

has mischaracterized this 2011 transaction as Newman acted merely as an intermediary to the

customer." *Id.* at PageID#: 687-88. Newman attaches an affidavit to the same effect. *See* R. 32-1.

When determining whether Plaintiff has met its "relatively slight" burden for setting out

a *prima facie* case that jurisdiction is appropriate, "the pleadings and affidavits submitted must

be viewed in a light most favorable to the plaintiff, and the district court should not weigh the

controverting assertions of the party seeking dismissal." *Air Products*, 503 F.3d at 549 (citation

and quotations omitted). Defendant has not challenged Plaintiff's affidavit which shows

Newman held himself out to be the "Division Sales Manager" of "Vista Food Exchange Ohio,"

instead arguing the fiduciary shield doctrine precludes consideration for purposes of jurisdiction

9

(1:13-cv-01195)

of his employment by Vista as sales manager. However, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether []he purposely availed h[im]self of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics*, 204 F.3d at 698 (citations omitted).

In light of this standard, Newman traveled to Ohio in relation to its business with the Ohio food program and personally transacted with Champion, an Ohio corporation. Further, Champion alleges Newman caused tortious injury in the state in relation to its bid to the Ohio food program. Significantly, Newman held himself out to be "Division Sales Manager" of "Vista Food Exchange Ohio." R. 26-3, PageID#: 346. This fact has not been contested; Defendant Newman instead argues he is protected by the fiduciary shield.

The Court finds jurisdiction under Ohio's long-arm statute is proper under at least one of the four bases identified by Champion. OHIO REV. CODE § 2307.382(A). Further, Defendant Newman's being hailed to court in Ohio does not violate "traditional notions of fair play and substantial justice" and Newman purposely availed himself of acting in Ohio and "reasonably foresaw the consequences of that availment. " *Balance Dynamics*, 204 F.3d at 698 (citation omitted). Therefore, the Court finds jurisdiction over Newman does not violate due process.

## CONCLUSION

For the reasons discussed above, the Court finds (1) Defendant Newman is not protected from jurisdiction by the fiduciary shield, (2) Newman's actions satisfy the Ohio-long arm statute, and (3) Newman reasonably foresaw the consequences of his purposeful availment to the

(1:13-cv-01195)

privilege of acting or causing a consequence in Ohio. Accordingly, Defendant Newman's motion

to dismiss for lack of personal jurisdiction is **DENIED**.

      IT IS SO ORDERED.


 August 6, 2013                        *s/ David D. Dowd, Jr.*
Date                               David D. Dowd, Jr.
                                      U.S. District Judge