# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHAMPION FOODSERVICE, LLC, | ) | CASE NO. 1:13-cv-1195 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| | ) | |
| VISTA FOOD EXCHANGE, INC., et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on the amended motion of defendants Vista Food Exchange, Inc. ("Vista") and Joshua Newman ("Newman") (collectively, "Vista defendants") to exclude evidence of the lost profit claims of plaintiff Champion Foodservice, LLC ("plaintiff" or "Champion"). (Doc. No. 545[1] ["Vista Mot."].) Defendants Matthew Gibson ("Gibson") and Innovative Foods, LLC ("Innovative") (collectively, "Gibson defendants") joined Vista's motion. (Doc. No. 539 ["Gibson Mot."].) Champion opposed the motions of both the Vista and Gibson defendants (Doc. Nos. 560 ["Opp'n to Vista Mot."] and 562 ["Opp'n to Gibson Mot."]), and defendants replied. (Doc. Nos. 574 ["Vista Reply"] and 581 ["Gibson Reply"].)

---

[1] In accordance with the Court's instructions, defendants' motion to exclude plaintiff's lost profit claims is included with the motion for summary judgment on plaintiff's second amended complaint. This Memorandum Opinion only addresses defendants' motion to exclude plaintiff's lost profit claims.

Defendants' motions seek a serious sanction as a consequence of plaintiff's persistent and pervasive refusal to fulfill its discovery obligations with respect to its lost profits damages computation. Champion is adamant that it fully complied with its damages discovery obligations as required by the Federal Rules. Throughout this litigation, however, Champion's purported "compliance" has been based on its own self-serving definition of evidence and information that supports its damages computation, and of what constitutes relevant discovery under the Federal Rules. By applying its own contrived interpretation of what the discovery rules require, Champion has refused to produce evidence and information that is clearly relevant and required under the federal rules, perhaps because such discovery would appear to be unfavorable to plaintiff's damages claim.

Our system of justice, aimed at resolving cases on the merits, hinges on the good-faith and honest participation of all parties in the discovery process as required by the Federal Rules. In this memorandum opinion, the Court examines in detail several representative examples of Champion's deliberate and willful withholding of clearly relevant and discoverable documents and evidence, which spawned numerous discovery disputes that delayed resolution of this case on the merits and wasted judicial resources. If parties are permitted to abuse or manipulate the discovery process based upon their own self-serving interpretation of the Federal Rules, our system of justice will not work. Thus, for the reasons that follow, defendants' motions are granted.

# I. BACKGROUND

## A. Factual

The background of this case has been extensively detailed in orders and opinions previously issued by the Court, and familiarity therewith is assumed. For the purpose of providing context for this Memorandum Opinion, the undisputed factual background pertinent to defendants' motions is briefly summarized here. Additional facts are discussed in greater detail later in this opinion as relevant to the Court's analysis.

Plaintiff Champion is an Ohio company engaged in the business of supplying shelf-stable meals to various organizations and institutions, including the Ohio Association of Foodbanks ("OAFB"). Defendant Gibson was hired by Tyrone Weithman ("Weithman") in January 2011 to work for Champion's predecessor company— "GoFast"—and then for Champion upon its formation later in 2011.

In 2012, Champion submitted a proposal to the OAFB for its summer backpack program,[2] and the OAFB awarded the contract to Champion. Gibson was involved in the preparation of the 2012 proposal and administration of the 2012 contract.

Vista was Champion's primary supplier for food products for the 2012 contract. Vista is also in the shelf-stable pre-packaged food business, but did not submit a proposal to the OAFB for the 2012 summer backpack program.

In February 2013, the OAFB requested bids for the 2013 summer backpack program, which were due on March 1, 2013. Gibson resigned from Champion on February 26, 2013. He submitted a bid on behalf of Vista on March 1, 2013. After Gibson

resigned, Champion requested and received an extension of time from the OAFB, and submitted a bid for the OAFB 2013 summer backpack program within the extension provided.

The OAFB awarded the 2013 summer backpack contract to Vista in late March 2013. Champion was selected by the OAFB for a different 2013 summer food program— the innovative meal delivery program ("IMD").

Champion sued Gibson in Crawford County on March 7, 2013 in connection with his departure from Champion. On May 2, 2013, Champion amended its state court complaint and added the other defendants to the lawsuit. The defendants then removed the case from Crawford County to the Northern District of Ohio.

After the case was removed, plaintiff filed a second amended complaint. Champion asserted various allegations in the second amended complaint against Gibson and the other defendants, and set forth claims for breach of fiduciary duty, misappropriation of trade secrets, tortious interference, conspiracy, and fraud. (*See* Doc. No. 404 (Second Amended Complaint ["SAC"]).) Plaintiff claims that, as a result of defendants' alleged wrongful conduct, Champion was not awarded the contract for the OAFB's 2013 summer backpack program, or for the OAFB's 2014 summer backpack and IMD programs. (In fact, the 2014 OAFB summer backpack and IMD programs were not bid out; instead, the State handled these programs in-house.) Plaintiff seeks lost profits with respect to these three OAFB programs.

---

[2] The OAFB's summer backpack program is also referred to as the summer feeding program, and summer weekends meals program.

Defendants' motions seek to exclude plaintiff's lost profit claims as a sanction on the grounds that plaintiff failed to comply with the requirements of Rule 26 regarding damages discovery, and failed to comply with the Court's order regarding the same. (Vista Mot. at 29131-33.[3]) Plaintiff counters that its lost profit claims are properly supported as required by the Federal Rules, and that it fully complied with the Court's order. (Opp'n to Vista Mot. at 32419-25.)

**B. Procedural History**

This case has been fraught with disputes regarding discovery and other matters since it was removed to the Northern District of Ohio in 2013. Relevant to defendants' motions are the disputes regarding damages discovery, and discovery of plaintiff's electronically stored information ("ESI"). The Court utilized both an appointed special master and the assigned magistrate judge to assist in addressing the myriad disputes.

**1. Damages discovery**

The Vista defendants first sought to exclude plaintiff's lost profit claims in June, 2014 based on a "pattern" of discovery violations. The alleged violations included Champion's failure to provide documentation that supports plaintiff's damages claim as required by the Federal Rules, and failure to provide a Rule 30(b)(6) witness—Edwin Nicewicz ("Nicewicz")—who was prepared to testify regarding lost profits. (Doc. No. 201.[4]) In its motion, Vista cited *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357 (6th Cir. 2010), for the proposition that excluding evidence of

---

[3] Unless otherwise noted, all references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

[4] Plaintiff opposed Vista's motion (Doc. No. 224), and Vista replied (Doc. No. 227).

Champion's lost profits may be an appropriate sanction pursuant to Rule 26 and Rule 37 for failing to comply with its discovery obligations. (*See*  Doc. 393 ["Order"] at 18803.)

The Court referred the motion to the special master. (Doc. No. 279.) In his proposed order, the special master noted that "[b]eyond accusing each other of deceit, concealment and fabrication, they are so factually incongruent as to make it nearly impossible to discern the truth[]" without an evidentiary hearing. (Doc. No. 336 ["10/24/2014 Special Master Order"] at 14389.) The special master did not conduct an evidentiary hearing, but ordered that Nicewicz be presented again, fully prepared, to testify on behalf of Champion on the issue of damages. (*Id.* at 14391-92.) Specifically, the special master ordered that:

> In that deposition, the existence/production of backup documents, freight costs, labor rates, etc., etc., and their relationship to the damages alleged by Champion can be explored at length. In like fashion, inquiry can be made as to how the profitability of the products in issue varies from the overall profitability of Champion, and an inquiry can be made as to that discrepancy. In sum, the further deposition of [Champion's] 30(b)(6) witness should be open as to all issues raised in this pending motion and associated briefs. That deposition should proceed on the record, without the additional production of any further documents. [Champion's witness(es)] should be fully prepared to testify on the issues that have been developed by the briefs.

(Order at 18801-02.)

The Vista defendants objected to the special master's order (Doc. No. 342), but the Court overruled the objection and, in order to give Champion another opportunity to fulfill its discover obligations, denied the motion to exclude plaintiff's lost profits claim without prejudice. Specifically, the Court noted that excluding Champion's lost profits "eventually may be an appropriate sanction[]" but, excluding damages "is an extreme

sanction, and the Court is reluctant to impose such a sanction without providing Champion with an additional opportunity to properly and completely respond to Vista's discovery requests regarding lost profits." ( *Id.* at 18803 (emphasis added).) The Court further warned, however, that "[f]ailure of Champion to comply with this Order may result in sanctions, up to and including dismissal of this case." (*Id.* at 18805.)

The order addressed both production of documents and Champion's Rule 30(b)(6) witnesses. (*Id.* at 18804-05.) With respect to the Rule 30(b)(6) damages depositions,[5] Champion produced Weithman on June 19, 2015 (Doc. No. 591 ["Weithman Dep."]), and Nicewicz on June 18, 2015 (Doc. No. 593-1 ["Nicewicz Dep."]).

After the depositions, the Vista defendants renewed the motion to exclude Champion's lost profit claims, arguing that plaintiff failed to comply with the order to provide documents supporting plaintiff's lost profit claims, and failed to produce Rule 30(b)(6) witnesses prepared to testify on the noticed topics. (Doc. No. 500.)[6] The Court denied defendants' renewed motion without prejudice and with leave to reassert the motion in the context of defendants' summary judgment motions.[7] (Doc. No. 525.) It is defendants' reasserted motion that is now before the Court.

---

[5] Vista's Rule 30(b)(6) notice, and Champion's witness designations, are found at defendants' exhibit ("DX") UU at the evidentiary hearing, and exhibit 120 to the Vista defendants' motion (Doc. No. 546-17 at 30523-27.)

[6] The Gibson defendants joined Vista's renewed motion. (Doc. No. 513.)

[7] The magistrate judge first issued an interim report and recommendation that the motion be denied as prematurely asserted outside the context of the parties' summary judgment motions (Doc. No. 517), to which defendants objected (Doc. Nos. 520 and 521). The Court overruled defendants' objections.

### 2. ESI discovery

Intertwined with the parties' discovery dispute on the issue of damages is defendants' discovery of plaintiff's electronically stored information ("ESI"). Champion long resisted ESI discovery and the issue was extensively briefed by the parties on multiple occasions. Ultimately, after repeated accusations by the defendants that the plaintiff was not fulfilling its discovery obligations (and over the protestations of the plaintiff), the Court ordered that plaintiff permit defendants to conduct on-site discovery of plaintiff's ESI by a forensic expert to be jointly selected by the parties. (Doc. No. 396.) The inspection was performed by Matthew Curtin ("Curtin") from InterHack in May, 2015.

Multiple disputes, spanning a period of months arose among the parties regarding the court-ordered ESI discovery. Plaintiff sought to maintain the entire ESI discovery under an "attorney eyes only" designation; the Court, however, refused, to permit such a blanket designation. (Doc. No. 524.) Defendants now claim that the court-mandated ESI discovery revealed documents relevant to Champion's claimed lost profit claims that were (wrongfully) not produced by Champion in discovery, and that plaintiff had outright denied the existence of some of those documents. (See Doc. No. 649 at 48803-48988 (Transcript of June 3, 2016 evidentiary hearing ["Tr."]) at 48853-55).) But for the court-ordered access to Champion's ESI, these discovery abuses would not have been discovered. (See Tr. at 48881-82.)

8

### 3. Evidentiary hearing

The Court conducted an evidentiary hearing regarding defendants' motions on June 3, 2016. The hearing was concluded that day, with the exception of the testimony of defendants' expert, Robert Greenwald ("Greenwald"), and Nicewicz. The parties agreed to submit Nicewicz's Rule 30(b)(6) testimony in lieu of live testimony at the hearing,[8] and to take Greenwald's deposition and submit it to the Court, also in lieu of live testimony. (*See* Minutes of proceedings [non-document] June 3, 2016.)

Greenwald's deposition[9] and exhibits thereto were subsequently filed with the Court (Doc. Nos. 661 and 662), as were the parties' post-hearing briefs (Doc. Nos. 659 ["Vista Brief"]; 660[10] (Declaration of Jonathan Scott ["Scott Dec."]); 663 ["Gibson Brief"]; 665 (Champion's Combined Response to Vista's and Gibson's Brief ["Champion Resp."]).

In ruling on the defendants' motions, the Court has considered the parties' motions and post-hearing briefing and exhibits thereto, the testimony at the evidentiary hearing and admitted exhibits, the Rule 30(b)(6) deposition of Nicewicz, and the deposition of Greenwald.

---

[8] *See* Tr. at 48957-59,

[9] For purposes of the evidentiary hearing, plaintiff does not challenge Greenwald's credentials, and stipulates that Exhibits 1, 2 and 3 are Greenwald's declarations that are part of the record in this case. (Doc. No. 661-25 ["Greenwald Dep."] at 49740.) Plaintiff's motion in limine relative to Greenwald's testimony at trial regarding damages (Doc. No. 603) is not relevant to the Court's determination of whether plaintiff complied with the Court's order and with its discovery obligations under the Federal Rules of Civil Procedure.

[10] Doc. No. 664 appears to be a duplicate filing of Attorney Scott's declaration filed at Doc. No. 660.

## II. DISCUSSION

### A. Fed. R. Civ. P. 26

Rule 26 governs disclosures required "without awaiting a discovery request" with respect to damages:

> ****
>
> **(iii)** a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including material bearing on the nature and extent of injuries suffered[.]

Fed. R. Civ. P. 26(a)(1)(A)(iii).

This rule obliges a party claiming damages "to disclose 'the best information then available to it concerning that claim, however limited and potentially changing it may be.'" *Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-CV-736-S, 2007 WL 2407255, at *1 (W.D. Ky. Aug. 20, 2007) (quoting 6 James W. Moore, Moore's Federal Practice § 26.22[4][c][ii] (3d ed. 2007)). Rule 26's requirements have been described "as the 'functional equivalent of a standing Request for Production under Rule 34.'" *Bridgestone Am., Inc. v. Int'l Bus. Mach. Corp.*, No. 3:13-CV-1196, 2016 WL 3211226, at *3 (M.D. Tenn. Jan. 12, 2016) (quoting Fed. R. Civ. P. 26 advisory committee's note to 1993

10

amendment). Moreover, Fed. R. Civ. P. 26(e)(1) requires a party to supplement or correct its disclosures or responses.[11]

The documentation and evidence required by Rule 26 must be sufficient to allow the opposing party to "independently analyze" the claim. *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (summary nature of damages documentation provides insufficient data to analyze claim for lost profits and fails to satisfy Rule 26); *Scheel v. Harris*, Civil Action No. 3:11-17-DCR, 2012 WL 3879279, at *4 (E.D. Ky. Sept. 6, 2012) (quoting *Bessemer,* 596 F.3d at 370); *see also Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *7 (E.D.N.C. May 7, 2012) (Rule 26(a)(1)(A)(iii) and Rule 26(e) are designed to provide a damages computation and analysis so that the opposing party "may then prepare to meet that evidence via cross examination and via evidence in its rebuttal case (such as its own expert witness).") A "critical factor" in determining lost profits are avoided costs—costs

---

[11] Fed. R. Civ. P. 26(e)(1)(A)-(B) requires that disclosures and discovery responses made under Rule 26(a) be supplemented or corrected:

    ***

    **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

    **(B)** as ordered by the court.

saved by not incurring the expenses necessary to earn the revenue[12] at issue. *Bessemer*, 596 F.3d at 367.

In addition to failing to comply with Rule 26, defendants contend that Champion also failed to comply with the order regarding document discovery of plaintiff's lost profit claims. In that order issued on March 18, 2015, the Court—echoing the language of Rule 26—provided plaintiff "with an additional opportunity to *properly and completely respond to Vista's discovery requests relating to lost profits*[,]" and further directed plaintiff to:

> collect all of the discovery it has produced thus far regarding lost profits from claims set forth in the first amended complaint (including a detailed lost profit calculation), compile all supporting documents for its lost profits claim as expanded in the anticipated second amended complaint (including an updated detailed lost profit calculation), and provide all of these documents, consecutively bates-numbered, to Vista's counsel in one orderly packet. Champion shall review the documents in this packet and certify that complete detailed calculations and all supporting documents have been produced. This bates-numbered packet shall be provided to Vista no later than April 15, 2015.

(Order at 18803-04.)

---

[12] As a separate argument, defendants contend that Champion's lost profit claims for the 2014 OAFB contracts is entirely speculative because, in 2014, the OAFB performed these contracts "in-house" as a cost saving measure. Champion maintains that it was defendants' alleged wrongful conduct that caused the OAFB not to bid out the 2014 contracts, and challenges the contention that the OAFB saved money by administering the contracts itself. The Court need not, and does not, address the merits of these arguments in ruling on defendants' motions for sanctions.

Additionally, the Court's analysis herein focuses entirely on whether evidence of Champio's lost profits should be excluded because Champion failed to comply with its discovery obligations. This analysis does not address the issue of whether such contracts would have been awarded to Champion if it were not for defendants' alleged wrongful conduct, or if Champion would be entitled to such damages if its loss profits claim was not excluded as a sanction.

The Court's directive did not limit Champion's production to documents previously produced. (Tr. at 48884-85.) On April 13, 2015, Champion certified that it complied with the order.[13] (Doc. No. 408.)

### 1. Champion's damages packet

The damages packet compiled by Champion may be found in several places in the record ("damages packet").[14] The packet was prepared by Nicewicz for purposes of litigation. (Nicewicz Dep. at 42117-20.)

The packet is divided into four sections—(1) projected profits for the 2013 OAFB summer backpack program; (2) projected profits for the 2014 OAFB summer backpack program; (3) profit calculations for the 2013 OAFB IMD program that was actually performed by Champion in 2013; and (4) projected profits for the 2014 OAFB IMD program. The projected profits for the three OAFB contracts at issue, and the "profit calculation" for the 2013 IMD program performed by Champion, are all presented following the same pattern.

The first document of each section is a spreadsheet containing a sale amount, followed by a list of expenses (food and utensils, boxes, packaging film, box label,

---

[13] The damages packet compiled and certified by plaintiff in response to the order contained damages documentation related to the Charlotte-Mecklenburg contract. Subsequently, plaintiff's Charlotte-Mecklenburg contract damages claim in the SAC was dismissed with prejudice. (*See* Doc No. 499.)

[14] Champion's lost profits damages packet is found in the record at plaintiff's exhibits ("PX") 53, 54, 55, and 56, and DX F from the evidentiary hearing. The packet is also found at exhibit 217 to defendants' motion, (Doc. No. 546-23 to Doc. No. 546-27 at 31868-32280) and exhibits 96, 97, 98, and 99 (Doc. No. 563) to plaintiff's opposition of defendants' motions for summary judgment. The pages of the packet are Bates numbered, and the Court will refer to the Bates number, rather than the Court's page identification number, because the Bates number of a page in the damages packet remains the same no matter where the packet has been filed in the record.

assembly and packaging labor, delivery, plastic "T shirt" bag,[15] and administrative costs), which is subtracted from the sales amount to produce the projected lost profit. (*See* damages packet at 1, 183, 239, 324.) For each spreadsheet, the packet includes a companion "Projected Production & Labor Cost Overview," which states the manner by which the expenses (avoided costs) listed on the spreadsheets were determined. (*See id.* at 178, 226, 316, 382.)

Each section contains documentation that Champion claims supports the calculations on the spreadsheets. Defendants argue that this documentation is insufficient and inadequate to enable defendants to analyze and verify plaintiff's lost profit claims, and thus does not comply with Rule 26 or the Court's order.

### *Meal delivery costs*

For example, with respect to delivery of the meals, Champion claims that it would have made all deliveries in its own box truck.[16] The overviews and spreadsheet calculations are based on a 1.5 cent per meal delivery rate for all three contracts for which plaintiff claims lost profits. (*Id.* at 178, 226, 382.) This rate is an "average" based on Champion's "experience." (Tr. at 48947.) The damages packet contains no actual documentation to support this calculation, and Nicewicz admits that no calculations were provided.[17]

---

[15] The "T shirt" bag expense is only included in the projected profits for the 2013 and 2014 summer backpack programs, and not included in the projected profits for the 2014 IMD program.

[16] Defendants challenge Champion's assertion that it would deliver all of the meals for the three OAFB contracts at issue. For the purpose of this analysis, the Court accepts Champion's assertion.

[17] Mr. Taft: "But he's asking you if you produced any of those calculations."
   Deponent: "No." (Nicewicz Dep. at 42446.)

14

Part of Champion's damages packet is the "profit calculations" for the OAFB's 2013 IMD program, which Champion actually performed and which Champion included in the packet as a "baseline"[18] for its projected lost profits. Although Champion actually performed this contract, the "profit calculations" are presented in the same summary "overview" fashion as the projected lost profits.

With respect to the cost of meal delivery for this performed contract, Champion applies the same non-documented sum—1.5 cent per meal—to calculate profits for the 2013 IMD contract that Champion applies to project lost profits. (*See* damages packet at 239, 316.) Even though Champion actually performed this contract in the summer of 2013, Champion claims to not know the extent to which the meals were delivered in its box truck or contracted out. (Tr. at 48919-20.) No documentation of cost for deliveries made by Champion's box truck (e.g. cost for the truck, driver cost, fuel cost, maintenance cost, mileage, etc.), or freight bills for contracted meal deliveries, were provided by Champion in its "profit calculation" for the 2013 IMD program. Champion asserts that this information was not provided because "we didn't rely on that. Again, it would have been a semi-truck here and there going to a location. If you were to work it back, it would be at that 1.5—a penny and a half delivery, if you work the numbers back." (*Id*. at 48920.)

But there is no way to "work the numbers back." Without actual supporting documentation, which Champion admittedly did not provide, Champion's meal delivery costs cannot be independently analyzed for the completed 2013 IMD program or for the

---

[18] Champion Resp. at 50140.

three OAFB contracts for which plaintiff claims lost profits. (*See* Greenwald Dep. at 49709, 49722-25; Doc. No. 546-1 (Supplemental Report of Robert Greenwald ["Greenwald Supp. R."]) at 29188, 29191.)

### *Production*

Production capacity is another example of expenses (avoided costs) for which plaintiff provides no documentation from which defendants may perform an independent analysis. In the damages packet, Champion asserts a production capacity of 38,000 packaged meal kits per 8 hour shift for all three of the OAFB contracts for which plaintiff claims lost profits, and for the 2013 IMD program that was actually performed by Champion.[19] These productivity assumptions are not based on actual production results.[20] (Tr. at 48898.) Rather, Champion bases its assumption on machine specifications—not Champion's actual production experience. (Tr. at 48897; damages packet at 179-80.)

According to Weithman, Champion's two packing machines operate at a speed of 40-55 units per minute. Calculated at 50 units per minute, 21,000 meals would be produced in a shift per machine. With a total of two machines, Champion assumes that it could package 42,000 meals per day on average. (*Id.* at 48895-96, 48902.) Nicewicz testified that the best speed to run the packaging machines is at dial setting 5—50 meals a minute. (Nicewicz Dep. at 42112-14.)

---

[19] Damages packet at 178, 226, 316, 382. Champion also provided no plant productivity information for the 2012 OAFB summer backpack program, which Champion also performed. (Tr. at 48898-48901.)

[20] According to Champion, it does not produce or maintain plant productivity reports per se, but does maintain lot reports. (Tr. at 48865-48866.)

16

But the actual rate of production depends on the type of meal produced (Tr. at 48894-95) and the number of items in the meal being packed. (Nicewicz Dep. at 42113). Besides production variability due to the nature and content of meals produced, there are days when the machines jam, stop working, or run less efficiently. (*Id*. at 42116-17.) Nicewicz claims that these variables were taken into account in arriving at an assumed daily production rate of 38,000 units per shift, which Champion uses in both its  lost profits projections, and profit calculation for the 2013 IMD program. (*Id.* at 42117-18.) Champion provides no documentation, however, upon which to analyze or verify this assumption.

Champion claims it maintains inventory/lot reports but not production reports. (Tr. at 48871; Nicewicz at 42115-16.) Champion did not produce any inventory reports, nor did it produce an actual production report prepared in December 2014. Champion claimed to be unaware these reports existed, even though they were maintained on Champion's network. (*See* Tr. at 48887-88, 48890-92.) The documents were discovered by defendants during the course of the deposition of Champion's former administrative assistant, Linda Atkinson ("Atkinson"), and as a result of court-ordered discovery of Champion's ESI. (*See id.* at 48881, 48886.)

Even though these documents were not originally produced during the normal course of discovery, but were belatedly discovered by chance during the Atkinson deposition and court-ordered ESI discovery, Champion contends that it is of no consequence because the documents are not relevant. (*See id*. at 48894.) According to Champion, the December 2014 production report, which reflects production rates in the

17

range of 23,000-27,000 units per day (an amount significantly lower than that used by Champion in its calculations), is not relevant to its lost profits calculations because: "[T]his is December, a down time, and this wouldn't correlate with us having 600,000 of, you know, five different meals to run. This would be sporadic. It would be piecemeal. Everyone's on Christmas break. The schools are [out]. So this would not be reflective and would not be a good sampling of what our factory is capable of." (*Id*. at 48896, see also 48903-04.) Champion likewise claims that the inventory reports are not relevant because they track lot numbers, not production. (*Id*. at 48929-30.) Champion's assertion that these documents were not produced based on plaintiff's conclusion that the documents are not relevant under Rule 26 reflects a recurring theme—the failure of Champion to produce relevant documents that might contradict Champion's unsubstantiated lost profit projections.[21]

### *Labor costs*

Closely related to plant productivity is labor cost. (Greenwald Dep. at 49699.) Champion identified labor costs on the spreadsheets as an expense (avoided cost) to be deducted from revenue in calculating its lost profits.

In support of Champion's labor costs, Champion provides a "sample" of payroll information for two line workers and for an administrative worker for a two-week period in August, 2013. (Tr. at 48907.) From this sample, Champion determined that an hourly rate of $9.06 per hour for line workers, and an hourly rate of $13.44 for it administrative

---

[21] At the evidentiary hearing, plaintiff's counsel conceded the relevance of these documents, but questioned whether the order required their production. (*Id*. at 48879.) To this, the Court expressed astonishment that these documents were not produced by Champion, but only were discovered by chance due to the Court granting defendants extraordinary access to Champion's ESI. (*Id*. at 48881.)

employee costs, would be applied to its lost profit calculations. (*See* damages packet at 181, 182.) Champion used these blanket sample rates for all three contracts for which it claims lost profits, and for its profit calculation for 2013 IMD program. (*See id.* at 178, 226, 316, 382.)

Champion's damages packet contains no documentation of actual labor costs or payroll records (such as payroll journals and payroll tax returns). (Greenwald Dep. at 49702-03.) Champion has an electronic payroll system, but Champion did not produce payroll records, which Nicewicz admitted were available for 2013, that could be examined to verify labor rates. (Nicewicz Dep. at 42059; Tr. at 48863-64.)

While Champion testified that it was possible to determine accurate labor costs for a given project from payroll (Tr. at 48864-65), no such calculations were made, either for contracts for which lost profits were calculated, or for the 2012 summer backpack and 2013 IMD contracts that Champion actually completed. Greenwald detailed the insufficiency of Champion's sample two-week payroll documentation to verify pay rates for workers over a two year period, and to verify Champion's avoided cost calculations for labor. (Greenwald Dep. at 49745-47; Greenwald Supp. R. at 29179, 29185.)

### *Food costs from inventory*

For yet another example, the food pricing used by Champion to calculate its profits for the 2013 IMD program performed by Champion is purportedly based on the use of food contained in Champion's inventory. (Nicewicz Dep. at 42207-11.) Nicewicz was not entirely certain, however, about the nature and amount of the food inventory used to perform the contract. (*Id*. at 42209-10.) Champion has a software program for tracking

food inventory (*Id*. at 42166; Tr. at 48939), but Champion provided no inventory documentation from which to verify its calculations regarding food costs from inventory. (Greenwald Supp. R. at 29184; Greenwald Dep. at 49742-43.)

### 2. Documents and evidence not produced by Champion

In addition to the deficiencies of the documentation provided by Champion in the damages packet, defendants also argue that plaintiff's lost profits disclosure is inadequate because some avoided costs were omitted from the calculation and other information relevant to the issue of lost profits was not produced.

### *OAFB 2012 summer backpack program*

For example, Champion claims lost profits for the OAFB's 2013 and 2014 summer backpack programs. The 2012 summer backpack program was actually performed by Champion. Weithman testified that Champion's performance of the 2012 summer backpack program would be a good case study—a good indicator—of Champion's expected performance of the 2013 summer backpack program. The 2012, 2013, and 2014 summer backpack programs involved 600,000 meals delivered to foodbanks across Ohio. (Weithman Dep. at 41035-36.) Greenwald agrees with Weithman that Champion's performance of the 2012 summer backpack program would be probative and useful in performing his analysis of Champion's lost profits claim for the 2013 and 2014 summer backpack programs. (Greenwald Dep. at 49708; Doc. No. 541-5 (Dec. 7, 2015 Declaration of Robert Greenwald ["Greenwald Dec."]) ¶¶ 7, 11.)

But discovery regarding the 2012 summer backpack contract was not provided, and no analysis of the profitability of the 2012 summer backpack program was performed by Champion in connection with its lost profit calculations.[22] (Weithman Dep. at 41054-55.) Champion's reason reiterates the recurring theme—plaintiff's performance of the 2012 contract is not relevant because plaintiff is not claiming lost profits for 2012,[23] and because "[w]e didn't rely upon 2012 to support our lost profits calculation."[24] (Tr. at 48840.)

Regardless of whether Champion relied on the 2012 contract in calculating lost profits for the similar 2013 and 2014 OAFB summer backpack programs, the Court specifically ordered Champion to comply with defendants discovery requests regarding lost profits and defendants made such request for information regarding Champion's performance of the 2012 contract, which both Weithman and Greenwald agreed would be

---

[22] While working for Champion, Gibson prepared a summary of Champion's performance of the 2012 OAFB summer backpack program (DX W), but it was not produced by Champion or included in the damages packet because Champion asserts that it did not rely on the document for its damages calculation. (Tr. at 48857.) The labor costs stated for performance of the 2012 contract in DX W are higher than the labor costs projected by Champion for the 2013 backpack program in the damages packet. (*Id*. at 48859.) Weithman dismissed this document as "more of a PR piece, kind of a fluff piece to say Ohio jobs were created, local vendors that were used. So, again, we did not rely on it. So I wouldn't rely on any of the numbers in this." (*Id*. at 48860.)But Weithman never contacted the OAFB to advise them that the numbers provided in the report were not accurate. (*Id.* at 48861.)

[23] Doc. No. 546-6 ["Pl. Resp. to Second Demand for Prod. of Docs."] at 29580.

[24] This assertion of plaintiff's counsel is contrary to the Rule 30(b)(6) deposition testimony of Nicewicz, who prepared Champion's damages packet. Nicewicz testified that he used the labor costs for the 2012 contract, which he adjusted to account for different packing requirements, for the 2013 summer backpack lost profit calculation. (Nicewicz Dep. at 42163.)

probative of Champion's lost profit claims. Specifically, Vista's second request for production of documents sought this information, by requesting the following:

> Documents reflecting Champion's food costs, non-food costs, freight costs, overhead, margin, and profit in connection with its proposal and revised proposal for the 2012 OAF back pack program.

(Pl. Resp. to Second Demand for Prod. of Docs. at 29580.[25])

Given Champion's acknowledgement of the similarities between the 2012 contract and the 2013 and 2014 summer backpack programs for which plaintiff claims lost profits, and the liberal construction of discovery under Rule 26, Champion's performance of the 2012 contract is clearly relevant.[26] Yet, Champion refused and failed to produce the documents.

In a similar fashion and notwithstanding multiple discovery requests, plaintiff refused to produce actual documentation supporting its damages computations.[27] Instead, Champion produced only its own summary and overviews of the information, making it impossible for the defendants to independently analyze and verify plaintiff's damages computation.

---

[25] The certificate of service for Champion's response is dated March 5, 2014.

[26] Under the Federal Rules, a party may discover "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is extremely broad." *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013) (citing *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998)); *Malibu Media, LLC v. Ricupero*, No. 2:14-CV-821, 2015 WL 4273463, at *8 (S.D. Ohio July 14, 2015) (Rule 26 is liberally construed in favor of allowing discovery) (citation omitted).

[27] *See, e.g.*, Pl. Resp. to Second Demand for Prod. of Docs., demand nos. 32 ("Backup documentation including invoices as to any calculation of profit or damages claimed by Champion in this case, including food costs, non-food costs and margins.") and 33 ("Documents reflecting Champion's food costs, non-food costs, freight costs, overhead, margin, and profit in connection with its proposal and revised proposal for the 2013 OAF back pack program.").

### Financial documents

Another example of available documents that were not produced by Champion in connection with its lost profit calculations on the grounds of relevance[28] are Champion's financial statements (including profit and loss statements)[29] and general ledgers.[30] Defendants' expert has indicated that these standard financial documents are necessary in in analyzing plaintiff's lost profit claims. (*See* Greenwald Dep. at 49753-54; Greenwald Supp. R. at 29184-86.) *Bessemer*, 596 F.3d at 368-70 (plaintiff did not disclose payroll journals, payroll tax returns, financial statements, financial summary reports, and general ledgers necessary to verify and analyze plaintiff's claim for lost profits). The failure to produce these documents prevents the defendants from being able to independently analyze the plaintiff's lost profit claims.

### Avoided costs omitted

While Champion identified some avoided costs on its lost profit spreadsheets, other avoided costs were omitted altogether from Champion's lost profit calculations. *See Bessemer*, 596 F.3d at 367 (avoided costs are a "critical factor" in determining lost profits).

For example, the cost of inbound freight is not included as an expense in Champion's damages packet, impacting defendants' ability to independently analyze

---

[28] Tr. at 48931-35.

[29] Champion's profit and loss statements were not produced in connection with Champion's damages claim because Champion did not consider them relevant, purportedly because the damages are based on single contracts and Champion's profit/loss statements are for an entire year. (Tr. at 48910-11.)

[30] Champion's general ledger is prepared by an employee of BC&G, another Weithman company. (Tr. at 48913.)

plaintiff's lost profit calculations. (Greenwald Supp. R. at 29179; Greenwald Dep. at 49734-35.) Inbound freight costs are shipping costs that Champion incurs with respect to items that it orders from vendors. Champion's tax returns reflect inbound freight costs. (*See, e.g.*, Doc. No. 662-3 (2013 U.S. Tax Return) at 49929 ($25,762); Doc. No. 662-2 (2012 U.S. Tax Return) at 49892 ($36,289).) Nicewicz testified that whether Champion pays inbound freight charges for products it orders "[d]epends on the supplier." (Nicewicz Dep. at 42387, 42394.) Weithman also testified that Champion incurs inbound or FOB freight charges for supplies purchased by Champion. (Tr. at 48917-18.) Champon did not include this expense (avoided cost) in its damages calculation or contemporaneous invoices for all of its food and supplies, thus Champion's assertion that shipping costs are included in the cost of these items cannot be tested.[31]

Also not included as an avoided cost in plaintiff's damages packet are utility costs, and Champion did not produce utility bills. While acknowledging that such costs might increase at times of higher production, Champion did not list utility costs as an expense because "[i]t would be so incidental that it's not—we didn't put it in, didn't rely on it. It would be a negligible cost." (*Id.* at 48922.) Greenwald agrees that utility costs are going to vary with production. (*See* Greenwald Dep. at 49712; Greenwald Supp. R. at 29188.) Without utility bills, however, Champion's conclusion that such costs are negligible cannot be independently analyzed.

---

[31] If shipping is not included in the cost of the items, and Champion has not included inbound freight/FOB charges as an expense in its lost profit calculations, then the projected lost profits are inflated by that amount.

### 3. Rule 26 analysis

Virtually all of plaintiff's expenses (avoided costs) listed on its lost profit spreadsheets[32] lack supporting documentation from which those costs can be verified and analyzed. In addition, some evidence relevant to plaintiff's lost profit claims that would enable defendants to independently analyze plaintiff's damages computation was not provided at all. Although documentation is available that would permit defendants to independently analyze plaintiff's lost profit computation, Champion has not provided it, choosing instead to provide unverifiable summaries, samples, averages, and estimates, or, in some instances, to not provide the information at all. Champion's discovery conduct not only fails to comply with Rule 26's specific damages discovery obligations, but also fails to comply with its obligations under Rule 26 to respond to defendants' discovery requests, and the Court's order regarding the same.

From the information provided by Champion in support of it damages computation, defendants are unable to verify or test plaintiff's projected lost profits. (*See* Greenwald Supp. R. at 29179-29191; Greenwald Dep. at 49793-94.) Damages disclosures lacking supporting documentation that would allow the opposing party to "independently analyze" a lost profits claim violate Rule 26. *Acuity Brands Lighting, Inc. v. Bickley*, No. 5:13-CV-366-DLB-REW, 2015 WL 10551946, at *2 (E.D. Ky. Nov. 30, 2015) (disclosure lacking supporting documentation that would allow the opposing party to independently analyze the claim violates Rule 26) (citing *Bessemer*, 596 F.3d at 370),

---

[32] Greenwald testified that there was some supporting documentation for boxes and packaging film. (Greenwald Dep. at 49789-91.)

*report and recommendation adopted sub nom. Acuity Brands, Inc. v. Bickley*, No. CV 13-366-DLB-REW, 2016 WL 1171541 (E.D. Ky. Mar. 24, 2016) (citing *Scheel*, 2012 WL 3879279, at *4)).

As argued by defendants' in their original motion for sanctions, and discussed by the Court in the order providing Champion with an additional opportunity to fulfill is discover obligations under Rule 26, *Bessemer* sets the standard in the Sixth Circuit regarding Rule 26's requirements relating to a party's damages discovery obligations.

Accordingly, the Court concludes that Champion's damages disclosures, and failure to properly and completely respond to defendants' discovery requests relating to lost profits, violate Rule 26 and the Court's order.

## B. Fed. R. Civ. P. 30(b)(6)

Information that was not provided by Champion in its damages packet and document discovery regarding lost profits was also not provided by its Rule 30(b)(6) witnesses. Defendants contend that Champion also violated the order relative to Champion's Rule 30(b)(6) witnesses. In that regard, the order required Champion:

> to produce one or more Rule 30(b)(6) witnesses, as appropriate, for an additional deposition regarding lost profits. Before selecting a witness or witnesses, Champion shall again review the topics that Vista seeks to discover on the issue of damages, and identify the appropriate individual(s) within its organization to provide testimony on those topics. The witness(es) must be knowledgeable and prepared to testify regarding all discoverable topics.

(Order at 18805.)

Rule 30(b)(6) requires that individuals designated to speak for the company must testify about "information known or reasonably available to the organization." The

26

designated witness must be prepared by the organization to adequately testify on the noticed topics. *Nacco Materials Handling Grp., Inc. v. Lilly Co.*, 278 F.R.D. 395, 400-01 (W.D. Tenn. 2011) (citing *FDIC v. Butcher,* 116 F.R.D. 196, 199 (E.D. Tenn. 1986) (a corporation must make a good-faith effort to designate persons having knowledge of the information sought and to prepare those persons) and *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D. N.C. 1989) (Rule 30(b)(6) requires a corporation not only to produce persons to testify with respect to the designated matters, but also to prepare the witness to give complete and knowledgeable answers)); *Prosonic Corp. v. Stafford*, No. 2:07-CV-0803, 2008 WL 2323528, at *1 (S.D. Ohio June 2, 2008) ("[f]or a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters") (quoting *Starlight Intern. Inc. v. Herlihy,* 186 F.R.D. 626, 638 (D. Kan. 1999) (quotation marks and further citation omitted)).

Preparation of a Rule 30(b)(6) witness is an active process. "Rule 30(b)(6) requires all such designees to review all matters known or reasonably available to the corporation in preparation for the deposition, even if the documents are voluminous and burdensome to review." *Beattie v. CenturyTel, Inc.*, No. 02-10277, 2009 WL 5066676, at *6 (E.D. Mich. Dec. 16, 2009) (citing *Sprint Commc'ns Co. v. Theglobe.com, Inc.,* 236 F.R.D. 524, 528 (D. Kan. 2006)); *Nacco Materials Handling Grp.,* 278 F.R.D. at 401 (Lilly's Rule 30(b)(6) designee was not adequately prepared to testify on the noticed topics because he did not meet with employees he knew had accessed plaintiff's website, examine their computers to determine what portion of plaintiff's secure site had been

27

accessed, or "review any documents or records to determine who accessed the site, although he admitted that Lilly probably had such records available").

### 1.    Weithman's Rule 30(b)(6) deposition

Defendants' Rule 30(b)(6) notice, in relevant part, identified the following topics:

7. Projects that Champion performed in 2011-2014 that were similar to the 2013 and 2014 OAFB contracts. Designated—Ty Weithman to mid-2013; Ed Nicewicz after mid-2013.

8. Champion's revenues, profits, margins, and performance on similar projects from 2011-2014. Designated—Ty Weithman to mid-2013; Ed Nicewicz after mid-2013.

(DX UU.)[33]

Weithman was designated by Champion to testify regarding projects similar to the OAFB contracts at issue. As previously discussed, Champion conceded that the 2012 contract performed by Champion would be an indicator of Champion's expected performance with respect to the OAFB's 2013 summer backpack program,[34] and Greenwald agreed. (Greenwald Dep. at 40708; Greenwald Dec. ¶¶ 7, 11.)

---

[33] In defendants' Rule 30(b)(6) notice, counsel for Vista noted: "These designations are tentative based on Champion's review of the topics[.]" (DX UU.)

[34] Weithman testified at his deposition that the two projects "were very similar program[s]," and while he could not say "definitively because there were different aspects to each program[,]" the comparison of Champion's profits in the 2012 program with the projected profits of the 2013 program "would be very close." (Weithman Dep. at 41054-55.) The OAFB's 2012 summer backpack program did not go through a bid process like the OAFB's 2013 summer backpack program, and the timing of the project was different. Notwithstanding these and some other differences, Champion acknowledged that the two projects were "similar" in scope—600,000 meals delivered to foodbanks across Ohio. (Weithman Dep. at 41035-36.) At the evidentiary hearing, Weithman again acknowledged that the 2012 program was "similar in scope," but attempted to back away from his Rule 30(b)(6) testimony by describing certain differences in the procedural aspects and timing of the 2012 program. (*See* Tr. at 48826-33.) Even were Weithman's after-the-fact qualifying testimony at the evidentiary hearing credible—and the Court finds that it was not—that testimony, more than a year after the deposition, is not relevant to the Court's determination as to whether Champion complied with the Court's order to produce a knowledgeable and prepared Rule 30(b)(6) witness *at the time* of Weithman's deposition.

Weithman testified that Champion did not separately maintain profit/loss statements on a per project basis, but acknowledged that all of the documents necessary to compute profits and margins for the 2012 OAFB summer backpack program were available, and "*if asked*," he could perform that analysis. (Tr. at 48826 (emphasis added); *see also* Weithman Dep. at 41054-55.) Defendants did ask.

The deposition notice directed Champion to provide profitability analysis for projects "similar" to the OAFB contracts at issue in the lost profits claims. Champion identified two such projects—the 2012 summer backpack and 2013 IMD programs. (Weithman Dep. at 41035-36; Nicewicz Dep. at 42120-24).[35] Champion possessed the underlying documents from which the information requested could be determined. (Weithman Dep. at 41054-55.) Champion had an obligation to prepare its designated witnesses to testify on these topics. *See Laethem Equip. Co. v. Deere & Co.*, No. 05-CV-10113-BC, 2007 WL 2897848, at *4 (E.D. Mich. Sept. 28, 2007) (granting motion to compel Rule 30(b)(6) deposition regarding profits where plaintiff argued that Deere had documents from which Deere's margins on products sold could be determined). But Weithman was not prepared to testify at his deposition regarding the noticed topics.

---

[35] Even if Champion concluded that such an analysis would not be relevant to its claim for lost profits because of certain purported program differences (Weithman Dep. at 41035-36; Nicewicz Dep. at 42120-24; *see also* Tr. at 48899-48901), a company may not circumvent its obligation to prepare its Rule 30(b)(6) witness to "answer fully and without evasion all questions about the designated subject matter" "simply by producing a witness without knowledge of the subjects believed to be irrelevant." *Painter-Payne v. Vesta W. Bay, LLC*, No. 2:12-CV-00912, 2014 WL 1599505, at *3 (S.D. Ohio Apr. 21, 2014) (case citations omitted). "[A] witness at a deposition is [generally] required to answer even irrelevant questions, subject to objection, because the circumstances under which a witness may refuse to answer deposition questions are quite limited. *See* Fed. R. Civ. P. 30(d)(1). That rule is not different for Rule 30(b)(6) depositions." *Prosonic*, 2008 WL 2323528, at *4 (citing *Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7 (D.D.C. 2004)).

### 2. Nicewicz's Rule 30(b)(6) deposition

Nicewicz prepared Champion's damages packet and was questioned at his deposition regarding those calculations. Nicewicz provided no more information in his Rule 30(b)(6) deposition than was available in the unsubstantiated information in the damages packet such as would enable defendants to independently verify and analyze plaintiff's lost profit claims.

For example with respect to food prices, Champion's damages packet contains invoices from time frames that are not contemporaneous with the time frame in which the project was to have been performed.[36] (Greenwald Supp. R. at 29180, 29184.) Nicewicz testified that he and an assistant verified food costs, but his testimony does not clarify the matter. Nicewicz produced no notes, emails, or other documents to support his scattered and uncertain recollections regarding these price verifications. (Nicewicz Dep. at 42067-79.)

Nicewicz also testified regarding labor costs. First, Nicewicz testified how he initially arrived at the labor costs contained in the damages packet, noting mistakes along the way with respect to both labor rate and the number of employees required to perform the work. (*Id.* at 42162-66.) Nicewicz's testimony about the corrected labor costs is no more illuminating, and is filled with estimates and uncertainty with respect to the details of Champion's labor costs used in its lost profit calculations. In the end, Nicewicz testified that Champion does not keep records of time to complete a project and required

---

[36] Champion essentially concedes that it did not provide contemporaneous invoices, arguing in its post-hearing brief that "Champion may have had more recent invoices, but the prices were the same." (Champion Resp. at 50153.)

labor, even with respect to completed projects similar to the contracts for which Champion claims lost profits. (*Id.* at 42162-75.)

As previously discussed regarding meal delivery costs, the damages packet contains no documentation to support Champion's use of 1.5 cents per mile for meal delivery costs. Nicewicz was questioned about this expense at his Rule 30(b)(6) deposition, but his testimony is a confusing labyrinth of assumptions, estimates, and guesswork and he admits that Champion produced no calculations to support this sum. (*Id.* at 42424-47.) Rather, Champion's meal delivery costs are based simply on Champion's "long experience." (Champion Resp. at 50153.)

### 3. Rule 30(b)(6) analysis

Both Weithman and Nicewicz were unprepared to testify about matters for which they were noticed regarding Champion's lost profit claims. Both Rule 30(b)(6) and the Court's order required Champion to produce witnesses that were knowledgeable and prepared, and to perform whatever inquiry and review was required to be so prepared. *Nacco Materials Handling Grp.,* 278 F.R.D. at 400-01. This preparation is an active process, and Weithman and Nicewicz had a duty to inquire and review documents so that they were knowledgeable about, and could testify, regarding the noticed topics. *Beattie*, 2009 WL 5066676, at *6; *Nacco Materials Handling Grp.,* 278 F.R.D. at 401. Champion's failure to produce Rule 30(b)(6) witnesses knowledgeable and prepared to testify violates the requirements of the Federal Rules and the order. *See Bessemer*, 596 F.3d at 367-68.

## III. SANCTIONS

The Court now considers what sanctions, if any, are appropriate based on these findings.

### A. Fed. R. Civ. P. 37(c)(1)

Defendants seek to exclude evidence of plaintiff's lost profits pursuant to Fed. R. Civ. P. 37(c)(1).[37] If a party fails to comply with its discovery obligations under Rule 26, Fed. R. Civ. P. 37(c)(1) provides for the imposition of sanctions. *Hitachi Med. Sys. Am., Inc. v. Choe*, No. 5:10 CV 384, 2012 WL 4475561, at *4 (N.D. Ohio Sept. 26, 2012) ("If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." (quoting Fed. R. Civ. P. 37(c)(1))); *Consol. Rail Corp. v. Grand Trunk W. R. Co.*, 853 F. Supp. 2d 666, 670 (E.D. Mich. 2012) ("If a party fails to disclose such information during discovery, it may not use that information against the opposing party at trial, unless the failure to disclose was substantially justified or is harmless." (citing Fed. R. Civ. P. 37(c)(1))).

---

[37] Defendants' motion seeks exclusion of evidence of plaintiff's lost profits "along with such other remedy the Court deems . . . appropriate[.]" (Vista Mot. at 29133.) The parties focused their motion briefing on excluding evidence of plaintiff's damages claim. In post-hearing briefing, defendants engage in an extensive analysis under *Bessemer* in support of excluding evidence of plaintiff's damages claim. (*See* Vista Brief.) In addition, citing *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485 (N.D. Ohio 2013), Vista appears to argue that dismissal of plaintiff's case is also an appropriate sanction for plaintiff's failure to fulfill its damages discovery obligations. (Vista Brief at 49177.) As noted by the court in *Bessemer*, the test for dismissal of plaintiff's case under Fed. R. Civ. P. 37(b) is an entirely different standard than exclusion of evidence under Rule 37(c)(1). *Bessemer*, 596 F.3d at 370. The sanction of dismissal was not the focus of the parties' briefing with respect to defendants' motion. That said, the Court recognizes that it may impose whatever sanction it determines to be appropriate under the federal rules, statutes, and the Court's inherent power.

"[T]he party seeking to invoke the preclusion sanction [of Rule 37(c)(1)] must first prove that the opposing party violated Rule 26(a) or (e) ...." *Nathan v. Ohio State Univ.*, No. 2:10-CV-872, 2012 WL 5342666, at *4 (S.D. Ohio Oct. 29, 2012) (quoting 7 James Wm. Moore *et al.,* Moore's Federal Practice § 37.60 [2][a] (3d ed. 2012)).

### 1. Plaintiff has failed to comply with the requirements of Rule 26 and the Court's order

The Court has previously detailed the severe deficiencies regarding plaintiff's damages disclosures in connection with its damages computation, and concluded that Champion's disclosures are insufficient to enable defendants to independently analyze plaintiff's damages claim. Nicewicz, who prepared plaintiff's damages packet, is admittedly not an accountant, has no experience in accounting, forensic accounting, auditing, appraisals, or business valuation. (Nicewicz Dep. at 42329-31.) Defendants' expert has detailed the insufficiencies of plaintiff's damages packet. The damages packet, does not permit the plaintiff's damages computation to be verified or tested. While an expert is not required under Ohio law to prove damages, without an expert Champion is unable to rebut the compelling opinion and testimony of defendants' expert that such documentation is needed in order to independently analyze plaintiff's damages claim. *Bessemer*, 596 F.3d at 369 ("[A]ccording to the unrebutted opinion of Seaway's expert, the records requested were 'standard accounting records' and Bessemer could not excuse its failure to disclose on the grounds that there were no documents to produce.")

Plaintiff argues that it has complied with Rule 26 and the order, and that defendants' motion is really a dispute about the amount of damages, not the sufficiency

of the damages documentation under Rule 26. Under Ohio law, plaintiff need not prove the amount lost with "absolute precision," and the "evidence need only be reasonable, not specific."[38] *Ask Chem., LP v. Computer Packages, Inc.*, 593 F. App'x 506, 511 (6th Cir. 2014) (quoting *Charles R. Combs Trucking, Inc. v. Int'l Harvester Co.,* 12 Ohio St. 3d 241, 466 N.E.2d 883, 887 (1984)). But defendants' motions concerns the discovery required under the Federal Rules, not the proof required under Ohio law to prevail on a claim for lost profits. In the absence of supporting documentation that enables defendants to independently analyze plaintiff's damages computation, that computation cannot be verified. *See Silicon Knights*, 2012 WL 1596722, at *7.

It is true that plaintiff compiled a packet of more than 400 pages to "support" its damages claim. Quantity alone does satisfy the requirements of the Federal Rules, and Champion included many pages that are of no value in allowing defendants to analyze plaintiff's damages claim. More troubling, though, is that Champion deliberately failed to provide information pertinent to defendants' analysis. Both with respect to the insufficient documentation provided, and with respect to the information not provided based on Champion's own contrived determination as to what information was relevant or was not relied upon, Champion is essentially asking defendants to "take their word for it" regarding plaintiff's overviews, summaries, samples, estimates, experience, and averages used to compute lost profits.

---

[38] "The *Erie* Doctrine 'requires a federal court sitting in diversity to apply state substantive law and federal procedural law.'" *Barnes v. Sun Chem. Corp.*, No. 1:14-CV-136, 2016 WL 759206, at *2 (W.D. Mich. Feb. 26, 2016) (quoting *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530 (6th Cir. 2008) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938))).

Rule 26 does not require defendants to take plaintiff's word for it. "*Bessemer* requires robust damage-related production." *Acuity Brands Lighting,* 2015 WL 10551946, at *1 n.2. Damages disclosures lacking supporting documentation that allows the opposing party to "independently analyze" the lost profit claims violates Rule 26. *Id.* at *2 (citation omitted); *Shoffner v. Qwest Commc'ns Corp.*, No. 4:01-CV-54, 2014 WL 3495045, at *9 (E.D. Tenn. June 23, 2014) (damages claim not sufficiently documented when plaintiff's estimated value of land then calculated various percentages of diminished values), *report and recommendation adopted,* No. 4:01-CV-54, 2014 WL 3495175 (E.D. Tenn. July 11, 2014).

Champion repeatedly failed to comply with the requirements of the Federal Rules by applying its own definition of relevance and what constitutes "support" for its damages claim. Rule 26's requirement that a claimant provide evidence supporting its damages computation is not a license to pick and choose what constitutes support, and exclude evidence that may be unfavorable to the claim, because plaintiff chooses not to "rely" on it. The Federal Rules and the courts determine what constitutes relevant evidence, not the claimant. "Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428-29 (6th Cir. 1996).

During the entire course of damages discovery, plaintiff continually objected to clearly relevant damages discovery requests based on the self-serving contention that the

information was not relevant, or not utilized by plaintiff to support its damages claim. Additionally, plaintiff steadfastly refused to provide actual supporting documentation for its damages computation, which was admittedly available, and instead provided defendants with prepared-for-litigation summaries and overviews from which defendants could not independently analyze plaintiff's calculations. Plaintiff's sustained and deliberate refusal to comply with its discovery obligations violates both Rule 26 and the Court's order.

### 2. Plaintiff's failure is not justified or harmless

If the moving party establishes that the party seeking damages did not comply with its discovery obligations under Rule 26, the burden shifts to the potentially sanctioned party to show that the violation of Rule 26 was justified or harmless. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 908-09 (N.D. Ohio 2008), *aff'd,* 606 F.3d 262 (6th Cir. 2010) (citations omitted).

"The advisory committee note to Rule 37(c) 'strongly suggests that 'harmless' involves an honest mistake on the part of the party coupled with sufficient knowledge on the part of the other party.'" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance v. United States,* No. 98–5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision)); *R.C. Olmstead,* 657 F. Supp. 2d at 908-09.

In its post-hearing brief, plaintiff continues to advance its recurring themes that the evidence sought by defendants to independently analyze plaintiff's damages computation is not relevant, and/or that plaintiff did not rely on the evidence to support its computation. (*See* Champion Resp.) As discussed above and at the evidentiary

hearing, a party does not satisfy its discovery obligations by picking and choosing supporting documentation based on its own definition of relevance, and ignoring information clearly relevant under the Federal Rules that may be unfavorable to its damages computation. (*See* Tr. at 48879-83.)

Moreover, plaintiff's refusal to comply with its discovery obligations under Rule 26 continued unabashed in the face of the Court's order regarding damages discovery (relating to both documents and Rule 30(b)(6) witness testimony), and in the face of the Court's warning that the sanction of exclusion or dismissal may be imposed if plaintiff did not avail itself of the additional opportunity provided by the Court to comply with its discovery obligations under both Rules 26 and 30(b)(6). *Bessemer*, 596 F.3d at 370 ("Even with the entry of a protective order in May 2007, Bessemer continued to evade Seaway's requests for information[.]") Undeterred, plaintiff continued to steadfastly rely on its own definition of relevance and support with respect to its lost profit calculations.

Plaintiff's argument that the court-ordered ESI discovery of Champion's network absolves plaintiff of its failure to comply with its discovery obligations is unavailing. Even if the ESI discovery revealed all of the documents that defendants sought regarding plaintiff's damages computation, and the Court does not find that it did,[39] that discovery was limited to attorneys-eyes-only (at plaintiff's insistence) until November 2015—which was several months after the order providing plaintiff with one last opportunity to comply with its Rule 26 and 30(b)(6)discovery obligations; after the second round of

---

[39] The parties dispute whether Champion's payroll system, which is located on BC&G Weithman's server and not Champion's server, was part of ESI discovery. (*Cf.* Tr. at 48941-44 and Doc. No. 660-4 (July 14, 2016 Declaration of Matthew Curtin) ¶ 4.)

Rule 30(b)(6) depositions ordered by the Court; after plaintiff's compilation of the damages packet ordered by the Court; and after the defendants' expert issued his supplemental report regarding the sufficiency of plaintiff's damages computation based on the evidence and information provided by Champion in its damages packet and by its Rule 30(b)(6) damages witnesses. What defendants may or may not have belatedly discovered as a result of the court-ordered ESI discovery is of limited relevance to the issue of plaintiff's failure to provide documents sought by defendants in their second request for production of documents in 2014,[40] plaintiff's failure to comply with Rule 26 regarding its damages computation, and its failure to provide knowledgeable and prepared witnesses for the Rule 30(b)(6) damages depositions.[41]

Rule 37(c)'s sanction of exclusion is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless. *Bessemer,* 596 F.3d at 370 (citation omitted); *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 943 (E.D. Mich. 2014) (When the disclosure requirements of Rule 26 are violated, Rule 37 mandates preclusion of the evidence "unless there is a reasonable

---

[40] *TLC Realty 1 LLC v. Belfor USA Grp., Inc.*, No. 3:13-CV-56, 2016 WL 1730712, at *2 (S.D. Ohio Feb. 3, 2016) ("In addition to Rule 26, parties must detail and provide proof of damages when requested to do so in discovery. *See, e.g., Bonnell v. Firstmerit Bank, N.A.,* No. 13–13589, 2014 WL 5511494, at *1 (E.D.Mich. Oct. 31, 2014) (excluding evidence of damages when the plaintiff failed to provide mandatory disclosures and failed to provide requested information regarding her damages even though the defendant expressly requested that information during discovery).").

[41] Even if Champion had already produced in discovery all of the documents regarding the 2012 contract, defendants were entitled to depose Champion's representative on the noticed topics. *See In re Vitamins Antitrust Litig.*, 217 F.R.D. 229 (D.D.C. 2002); *Richardson v. Rock City Mech. Co., LLC*, No. CV 3-09-0092, 2010 WL 711830, at *7 (M.D. Tenn. Feb. 24, 2010) ("simply because the defendant has previously produced documents, the plaintiff is not precluded from inquiring about those documents at a Rule 30(b)(6) deposition") (citing *Foreclosure Mgmt. Co. v. Asset Mgmt. Holding,* 2008 WL 3895474 *5 (D. Kan. Aug.21, 2008); *Tri-State Hosp. Supply Corp. v. United States,* 226 F.R.D. 118, 125-26 (D.D.C. 2005)).

explnation of why Rule 26 was not complied with or the mistake was harmless.") (quoting *Bessemer,* 596 F.3d at 370 (6th Cir. 2010) (quotation marks and further citation omitted)); *Callen Mfg. Corp.*, 2016 WL 865733, at *5 ("A noncompliant party may avoid sanction if there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.") (quoting *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quotation marks and further citation omitted)).

Applying the factors used in the Sixth Circuit to determine if the non-disclosures are substantially justified or harmless,[42] the Court concludes that plaintiff's non-compliance was willful and deliberate—not justified or harmless. Similar to *Bessemer*, plaintiff's claim for damages is not a surprise to defendants, but the insufficiencies of plaintiff's damages disclosures are critical to defendants' defense of plaintiff's lost profit claims. The unrebutted testimony of defendants' expert is that without the documents and information at issue, plaintiff's damages computation cannot be independently analyzed. Plaintiff's noncompliance with Rule 26 thwarted defendants' ability to independently analyze plaintiff's lost profit claims and effectively rebut the profits projected in plaintiff's damages packet. (*See, e.g*., Greenwald Dep. at 49838 (damages calculations based on assumptions for which there is no supporting documents).) Defendants' inability

---

[42] Courts in the Sixth Circuit consider five factors when determining whether a party's omitted or late disclosure is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014) (further citation omitted)); *Callen Mfg. Corp. v. Nexteer Auto. Corp.*, No. 15-CV-11363, 2016 WL 865733, at *5-6 (E.D. Mich. Mar. 7, 2016).

to analyze plaintiff's damages computation before the evidentiary hearing remained unchanged by any evidence introduced at the hearing. (*See* Greenwald Dep. at 49675-85, 49840.) Plaintiff's continued willful failure to fulfill its discovery obligations is neither justified nor harmless.

Rule 37(c)(1) allows for the imposition of both greater and lesser sanctions for failure to disclose or supplement discovery required by Rule 26(a) or (e).[43] Fed. R. Civ. P. (c)(1)(A)-(B). Notwithstanding the Court's conclusion that plaintiff's failure was not justified or harmless, the Court has nevertheless considered whether a lesser sanction is warranted and appropriate under Rule 37(c)(1).

For example, the Court considered shifting the cost of court-ordered ESI discovery from defendants to plaintiff because the court-ordered discovery revealed that plaintiff did not produce documents available on their computers that were relevant to plaintiff's lost profit claims. The Court also considered utilizing a jury instruction with respect to the issue of damages, such as, for example, Champion's unprofitability as a company.

The Court concludes, however, that these sanctions would be insufficient under the circumstances of this case. First, the Court provided plaintiff with an additional opportunity to comply with its discovery obligations, both with respect to Rule 26 and Rule 30(b)(6), and warned plaintiff that failing to do so may result in the exclusion of lost

---

[43] Rule 37(c)(1) provides for less "draconian options" if warranted by the circumstances. *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 730 (S.D. Ohio 2014) ("[N]otwithstanding the tough language in parts of Rule 37(c)(1), the remainder of the Rule allows a Court to exercise its discretion to impose a large range of discovery sanctions upon a violator including, if the Court deems the violation 'substantially justified' or 'harmless,' no sanction at all.").

profits evidence, and even dismissal of the case. (Order at 18803-05.) Despite being given this additional opportunity to properly and completely comply with the discovery rules and avoid sanction, Champion persisted to flout its discovery obligations under the Federal Rules. Second, the lesser sanctions considered would not be sufficient to address the ultimate consequence of plaintiff's discovery violations, which thwarted defendants' ability to independently analyze—and ultimately defend against—plaintiff's unsupported lost profit claims.

Thus, the Court concludes that exclusion of evidence of plaintiff's lost profit claims for repeated failure to fulfill its discovery obligations, even after being given numerous opportunities to do so, is an appropriate and necessary sanction under Rule 37(c)(1) given the enormity plaintiff's deficiencies in fulfilling its discovery obligations. *See Bessemer*, 596 F.3d at 369-70.

**B. Rule 37(b)(2)**

Rule 37(b)(2) provides for the imposition of sanctions for the failure to obey a court order to provide or permit discovery. For such violations, a court may issue "further just orders[,]" which may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence." *See Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (N.D. Ohio 2013) (quoting Fed.R.Civ.P. 37(b)(2)(A)(i)–(vii)).

Appropriate sanctions under Rule 37(b)(2) include prohibiting a party from pursuing damages that would have been supported by the discovery that the party failed to provide pursuant to a court's order. *See Karlik v. Colvin*, No. 12-CV-14879, 2014 WL

2095352, at *2 (E.D. Mich. May 20, 2014) (granting defendant's motion to exclude medical-based damages evidence at trial pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii) where plaintiff failed to comply with court order to provide medical release, even though plaintiff provided some medical documents, because defendant would be prejudiced by not having an opportunity to review plaintiff's medical records prior to trial); *see also Fontaine v. State Farm Fire & Cas. Co.*, No. 2:15-CV-12881, 2016 WL 520988, at *2 (E.D. Mich. Feb. 4, 2016) ("Should Plaintiff fail to supplement his answer to Interrogatory No. 1 within the time specified, he will be precluded from pursuing the damages that would be supported by these documents and responses; in other words, he will be prohibited 'from supporting or ... from introducing designated matters in evidence[,]' as the sanction specified in Fed. R. Civ. P. 37(b)(2)(A)(ii).").

In this case, plaintiff failed to comply with the Court's order regarding discovery under both Rules 26 and 30(b)(6). Although plaintiff provided some information in its damages packet, plaintiff failed to: (1) fully and completely respond to defendants' requests for discovery relating to lost profits; (2) failed to produce available evidence sufficient under Rule 26 to support its damages computation; and (3) failed to produce knowledgeable and prepared Rule 30(b)(6) witnesses regarding its lost profit claims. *See, e.g., Karlik*, 2014 WL 2095352, at *2; *TLC Realty 1 LLC*, 2016 WL 1730712, at *2; *Acuity Brands Lighting, Inc.*, 20015 WL 10551946at *2 (citing *Scheel*, 2012 WL 3879279, at *4); *Nacco Materials Handling Grp.*, 278 F.R.D. at 400-01.

Based on plaintiff's deliberate failure to comply with the Court's order to fulfill its discovery obligations, the Court finds that excluding evidence of plaintiff's lost profits is also the most appropriate sanction under Rule 37(b)(2).

## IV. CONCLUSION

For all of the foregoing reasons, defendants' motions to exclude evidence of Champion's lost profits claim with respect to the OAFB 2013 and 2014 summer backpack programs, and OAFB 2014 summer IMD program, as a sanction for plaintiff's failure to fulfill its obligations under the Federal Rules and for its violations of the Court's order regarding lost profits discovery, are granted. Accordingly, Champion is precluded from making any reference to, or presenting at trial any testimony, evidence, or argument, concerning alleged lost profits and/or damages with respect to any of the OAFB contracts at issue in this case.

**IT IS SO ORDERED**.

Dated: August 23, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**