**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHAMPION FOODSERVICE, LLC, | ) | CASE NO. 1:13-cv-1195 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| VISTA FOOD EXCHANGE, INC., et | ) | |
| al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on four motions:

1. Plaintiff Champion Foodservice, LLC ("plaintiff" or "Champion") moves for partial summary judgment as to liability on plaintiff's claims in its second amended complaint ("SAC") and on the counterclaims of defendants Matthew Gibson ("Gibson") and Innovative Food Service, LLC ("Innovative") (collectively "Gibson defendants") (Doc. No. 527 ["Pl. Mot."]). The Gibson defendants opposed the motion (Doc. No. 564 ["Gibson Opp'n"]), as did defendants Vista Food Exchange, Inc. ("Vista") and Joshua Newman ("Newman") (collectively "Vista defendants") (Doc. No. 566 ["Vista Opp'n"]). Champion filed a combined reply. (Doc. No. 572 ["Pl. Reply"].)

2. The Vista defendants move for summary judgment[1] on all claims in the SAC. (Doc. No. 545 ["Vista Mot."].) Champion opposed the motion (Doc. No. 560 ["Pl. Opp'n to Vista"]), to which the Vista defendants replied (Doc. No. 574 ["Vista Reply"]).

3. The Gibson defendants move for summary judgment on all claims in the SAC and for summary judgment on Gibson's counterclaim. (Doc. No. 539 ["Gibson SJ Mot."].) Champion opposed the motion (Doc. No. 562 ["Pl. Opp'n to Gibson SJ"]), to which the Gibson defendants replied (Doc. No. 581 ["Gibson SJ Reply"]).

4. The Gibson defendants also move to amend the counterclaim pursuant to Fed. R. Civ. P. 15. (Doc. No. 547 ["Gibson Rule 15 Mot."].) Champion opposed the motion (Doc. No. 557 ["Pl. Opp'n to Gibson Rule 15 Mot."]), to which the Gibson defendants replied (Doc. No. 565 ["Gibson Rule 15 Reply"]).

For the reasons that follow, the parties' motions are granted in part and denied in part.

## I. BACKGROUND

### A. Factual

The factual background of this case has been extensively detailed in orders and opinions issued previously by the Court and familiarity therewith is assumed. For the purpose of providing context for this memorandum opinion, however, the undisputed factual background is briefly summarized. Additional facts and disputed facts are discussed later in this opinion as relevant to the Court's analysis.

---

[1] The Vista defendants filed a motion for summary judgment (Doc. No. 540), and then an amended motion for summary judgment (Doc. No. 545). The Court's reference to the Vista defendants' motion herein refers to the amended motion for summary judgment.

Defendant Gibson was hired by Tyrone Weithman ("Weithman") to work for Champion's predecessor company—"GoFast"—and then for Champion upon its formation later in 2011. Weithman is a principal of Champion and other Weithman business entities.

Gibson and Weithman engaged in negotiations regarding compensation and other aspects of the working relationship orally and by email. No formal written contract memorializes the nature of Gibson's relationship with Champion or Gibson's compensation, both of which are disputed. There is no dispute that Gibson was paid for his work at Champion as an independent contractor through defendant Innovative, a limited liability company formed by Gibson.

Gibson received a laptop computer ("laptop") from Weithman that Gibson used for his work at Champion. The parties dispute whether the laptop was given to Gibson by Weithman outright, or loaned to Gibson in connection with Gibson's work for Champion.

Champion is in the business of providing prepackaged shelf-stable meals. The Ohio Association of Foodbanks ("OAFB") provides such meals to children and needy Ohioans through various summer programs. Champion submitted a proposal to the OAFB for its 2012 summer backpack program[2] (the "2012 proposal"), and the OAFB awarded the contract to Champion (the "2012 contract"). Vista supplied Champion with

---

[2] The OAFB's summer backpack program is also referred to as the summer feeding program, and summer weekends meals program.

the food products for the 2012 contract. Vista is also in the shelf-stable prepackaged food business, but did not submit its own proposal for the OAFB's 2012 summer backpack program.

Gibson received notice from the OAFB in February, 2013 that the bid for the 2013 OAFB summer backpack program was due on March 1, 2013. Gibson resigned from Champion on February 26, 2013, and Gibson had the laptop with him at the time.

On March 1, 2013, Gibson submitted a bid for the OAFB's 2013 summer backpack program on behalf of Vista ("Vista 2013 proposal"). After Gibson resigned, Champion submitted its own bid to the OAFB ("Champion 2013 proposal").

There is no dispute that Vista and Champion were the top two finalists for the OAFB's 2013 summer backpack program. The 2013 summer backpack contract was awarded to Vista. Champion was awarded the contract for the OAFB's 2013 innovative meal delivery ("IMD") program.

After Gibson resigned, Champion filed suit in Crawford County, Ohio, against Gibson seeking a temporary restraining order and demanding return of the laptop from Gibson. On May 2, 2013, Champion amended its state court complaint and added the other defendants. Defendants then removed the case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

After the case was removed, plaintiff sought and received leave of Court to file a second amended complaint.[3] (Doc. No. 404 ["SAC"].) The SAC sets forth seven claims

---

[3] Vista's request in its motion for summary judgment that plaintiff's second amended complaint be stricken, is denied. (Vista Mot. at 29122 (All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.).)

for relief: (1) breach of fiduciary duty against Gibson; (2) misappropriation of trade secrets against all defendants; (3) tortious interference with business relationships against all defendants; (4) fraud against Gibson; (5) civil conspiracy against all defendants with respect to all alleged claims; (6) spoliation of evidence against Gibson; and (7) conversion against all defendants. (SAC ¶¶ 28-65.) Champion claims that as a result of defendant's alleged wrongful conduct, Vista was awarded the contract for the OAFB's 2013 summer backpack program, and not Champion.[4] Gibson filed a counterclaim for: (1) breach of contract for unpaid commissions; (2) unjust enrichment; (3) indemnification; and (4) bad faith litigation. (Doc. No. 447 ["Counterclaim"].)

## B. Procedural

### 1. Sanctions motions

Incorporated in the parties' motions for summary judgment are a variety of motions for sanctions. The Court conducted a hearing on the sanctions motions on April 20, 2016. At the hearing, the parties reached an agreement to withdraw all of their motions for sanctions except for defendants' motions to exclude evidence of plaintiff's lost profits claim. (Doc. No. 629 (Transcript of April 20, 2016 Hearing ["Tr."]) at 45898-45900.)

---

[4] In addition to Champion's claim for damages with respect to the OAFB's 2013 summer backpack program, plaintiff also claims that it was not awarded contracts for the OAFB's 2014 summer backpack and IMD programs because of defendants' alleged wrongful conduct. (SAC ¶¶ 111-140.) The SAC also alleges damages relative to a 2013 Charlotte-Mecklenburg Schools contract. (SAC ¶¶ 66-110.) That damages claim was dismissed with prejudice by the Magistrate Judge. (Doc. No. 499.) No objection was filed to the magistrate judge's order.  (*See* Doc. No. 524.) Plaintiff's final claim for damages is for the cost of the forensic examination of the laptop by Binary Intelligence, Inc., as well as associated attorney fees, incurred by Champion as a consequence of defendants' alleged spoliation of the laptop. (SAC ¶¶ 141-179.) The Court has determined, however, that plaintiff failed to prove its spoliation claim. (Doc. No. 682 ["FOF & COL"].)

The Court addressed defendants' motion to exclude evidence of plaintiff's lost profits claim in a separate memorandum opinion and order. (Doc. No. 683 ["MOO"].) In that ruling the Court granted defendants' motion to exclude evidence of plaintiff's lost profits claim for the 2013 OAFB summer backpack contract, and for the 2014 summer backpack and IMD contracts. (*Id.*) Plaintiff, therefore, is precluded from introducing testimony or evidence regarding lost profits with respect to these three contracts.  (*Id.*)

All of the parties' motions for sanctions submitted in concert with their motions for summary judgment have been withdrawn or ruled upon. Thus, this memorandum opinion need not and does not address motions for sanctions.

### 2. Plaintiff's spoliation claims

At a hearing on April 20, 2016, the parties agreed to waive their request for a jury trial with respect to plaintiff's spoliation claims and to submit those issues to the Court for decision. (*See* Tr. at 45899-45907.) The Court has separately issued its Findings of Fact and Conclusions of Law regarding plaintiff's spoliation claims. (*See* Doc. No. 682.) In that ruling, the Court found that plaintiff failed to carry its burden to prove its state law claims for spoliation and defendants were entitled to judgment in their favor on that claim. (*Id.*) Thus, this opinion does not address the parties' Rule 56 motions with respect to plaintiff's claims for spoliation.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which demonstrates the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Summary judgment

7

requires that a plaintiff present more than a scintilla of evidence to demonstrate each element of a prima facie case." *Garza v. Norfolk S. Ry. Co.* 536 F. App'x 517, 519 (6th Cir. 2013) (citing *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 268 (6th Cir. 2007)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> Summary judgment is required:
>
> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

8

The typical summary judgment standard of review "poses unique issues" when cross motions for summary judgment are filed. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). When cross motions are filed, the district court must evaluate each party's motion on its own merits, drawing all reasonable inferences against the moving party. *Id.* (citation omitted). If it is possible to draw inferences in either direction, then both motions for summary judgment should be denied. *Id.* at 592-93. The making of contradictory claims on summary judgment does not mean that if one is rejected the other must be accepted. *Id.*

This matter is before the Court on diversity jurisdiction pursuant to 28 U.S.C. § 1332. While the Court applies federal law with respect to its Rule 56 analysis, in diversity actions, federal courts apply the forum state's substantive law. *See Savedoff v. Access Grp., Inc.,* 524 F.3d 754, 762 (6th Cir. 2008) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 187, 82 L. Ed. 1188 (1938)). Thus the Court applies Ohio law to Champion's and Gibson's state law claims.

**B. Breach of Fiduciary Duty—First Claim for Relief**

Champion alleges that Gibson breached his fiduciary duty to it in a number of ways, including, when Gibson allegedly: (1) misappropriated Champion's trade secrets and confidential and proprietary information; (2) used that information to secure the 2013 OAFB summer backpack contract for himself and for the benefit of Vista; and (3) engaged in self-dealing with the OAFB to secure the 2013 summer backpack contract for Vista and himself, instead of securing the contract for Champion. (SAC ¶¶ 31-34.)

In order to prove breach of fiduciary duty under Ohio law, plaintiff must establish: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Gracetech Inc. v. Perez*, No. 96913, 2012 WL 589473, at *4 (Ohio Ct. App. Feb. 23, 2012); *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 597 (N.D. Ohio 2009) (same) (quoting *Werthmann v. DONet, Inc.,* No. 20814, 2005 WL 1490372, at *7 (Ohio Ct. App. June 24, 2005)).

Champion claims that it was damaged by Gibson's breach of fiduciary duty because it was not awarded the contracts for the 2013 summer backpack program, and the 2014 summer backpack and IMD programs. However, the Court has previously ruled that plaintiff is precluded from introducing testimony or evidence regarding lost profits for these three OAFB contracts. (*See* MOO.)

In order to prove its claim for breach of fiduciary duty against Gibson, Champion must establish an injury as a result of the breach. "Damage to the plaintiff is an essential element of a breach of fiduciary duty claim." *Brosz v. Fishman*, 99 F. Supp. 3d 776, 786 (S.D. Ohio 2015) (citing *Newcomer v. Nat'l City Bank,* 19 N.E.3d 492, 507 (Ohio Ct. App. 2014) (citing *Strock v. Pressnell,* 527 N.E.2d 1235, 1243 (Ohio 1988))); *see also Helfrich v. Strickland,* No. 008 CA 101, 2009 WL 2933736, at *5 (Ohio Ct. App. Sept. 11, 2009) (summary judgment is appropriate where appellant failed to put forth any evidence of damages, an essential element of a claim for breach of fiduciary duty).

Because Champion is precluded from introducing any testimony or evidence regarding lost profit damages with respect to the 2013 and 2014 OAFB contracts, plaintiff cannot establish an essential element of its claim for breach of fiduciary duty.

Thus, defendants are entitled to judgment as a matter of law on plaintiff's claim for breach of fiduciary duty. *Celotex,* 477 U.S. at 322-23. Accordingly, defendants' motions for summary judgment on plaintiff's first claim for relief are granted and plaintiff's motion on this claim is denied.

## C. Misappropriation of Trade Secrets—Second Claim for Relief

All parties move for summary judgment on plaintiff's claim for misappropriation of trade secrets pursuant to Ohio's Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code §§ 1333.61-1333.69. In order to prevail on a claim for misappropriation[5] of a trade secret in Ohio, plaintiff must establish by a preponderance of the evidence: "(1) the

---

[5] OUTSA defines misappropriation of a trade secret as follows:

(B) "Misappropriation" means any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a)  Used improper means to acquire knowledge of the trade secret;

(b)  At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c)  Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ohio Rev. Code § 1333.61(B).

11

existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008) (citing *Hoover Transp. Serv., Inc. v. Frye,* 77 F. App'x. 776, 782 (6th Cir. 2003) (per curiam)).

> OUTSA defines a trade secret as:
>
> (D) . . . information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D).

The Ohio Supreme Court has identified six factors to consider when determining whether information is a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Heartland,* 258 F. App'x at 861-62 (citing *State ex rel. The Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997)).

No single factor is dispositive, but "[a] business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *The Plain Dealer,* 687 N.E.2d at 672 (citation omitted). "[O]nce material has been publicly disclosed, it loses any status it ever had as a trade secret." *Heartland,* 258 F. App'x at 861-62 (quoting *State ex rel. Rea v. Ohio Dept. of Educ.,* 692 N.E.2d 596, 601 (Ohio 1998)).

"In addition to its confidential nature, the purported trade secret must be novel in the sense that it is information not generally known to others in the industry." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 986 (N.D. Ohio 2008) (citing *R&R Plastics, Inc. v. F.E. Myers, Co*. 637 N.E.2d 332, 341 (Ohio Ct. App. 1993)). Resolving cases in which a former employee is accused of the unauthorized use or disclosure of a trade secret requires reconciling the rights of an employer in its trade secrets, and the right of employees to earn a livelihood using his personal skill, knowledge and experience. *The Rightthing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, at *8 (N.D. Ohio Feb. 2, 2009) (citing *Valco Cincinnati, Inc. v. N & D Mach. Serv., Inc.,* 492 N.E.2d 814 (Ohio 1986)). This requires distinguishing between information that is generally available in the trade, and information secret to the employer. *Hildreth Mfg., L.L.C. v. Semco, Inc.*, 785 N.E.2d 774, 783 (Ohio Ct. App. 2003) (citing *Valco*, 492 N.E.2d at 818).

Plaintiff groups its alleged trade secrets into three categories: (1) the 2012 proposal; (2) information regarding use of developmentally impaired workers (with Lott Industries) and packaging design (with Skybox); and (3) Champion's "compilation database" of documents. (Pl. Mot. at 22800.) "The burden is on Plaintiff to prove that

13

information has trade secret status." *Thermodyn*, 593 F. Supp. 2d at 985 (citing *State ex rel. Besser v. Ohio State Univ.,* 732 N.E.2d 373, 378 (Ohio 2000)).

### 1. The 2012 proposal[6]

Champion argues that the 2012 proposal is a trade secret on the grounds that it has independent economic value because it met the OAFB's requirements in 2012, contained Champion's pricing information, and would provide a competitor with valuable knowledge to quickly create a bid for the OAFB's 2013 summer backpack program. Champion contends that the value of the 2012 proposal was evidenced by Gibson, who admittedly used it as a template for preparing Vista's 2013 proposal for the OAFB's summer backpack program.[7] (Doc. No. 267-1 (Deposition of Matthew Gibson ["Gibson Dep."]) at 6510.)

Among other arguments, defendants posit that the 2012 proposal is a public record, and thus, not a trade secret.[8] Champion vigorously disputes that the 2012 proposal is a public record, pointing to the confidentiality legend on the 2012 proposal as evidence

---

[6] Doc. No. 527-51 (Champion Foodservice Proposal for The Ohio Association of Second Harvest Foodbanks Weekend Backpack Program Summer 2012 ["2012 Proposal"]).) The Court notes that the 2012 proposal was originally filed on the public docket as a consequence of the ruling by Magistrate Judge Limbert regarding the parties' dispute concerning the confidentiality of the 2012 proposal. (Doc. No. 357 at 15235-36.) Plaintiff did not object to this ruling.

[7] Gibson admits using the 2012 proposal as a template for Vista's 2013 OAFB bid, but the parties disagree as to who created the 2012 proposal and to whom it belongs. (Gibson Dep. at 6510; Doc. No. 527-1 (Affidavit of Tyrone Weithman ["Weithman Aff."]) ¶¶ 21, 42, 43.) For the purpose of the motions on this misappropriation claim, the Court construes the facts in a light most favorable to the plaintiff on the issue of authorship and ownership of the 2012 proposal.

[8] The 2012 proposal also contains a copyright designation. (2012 proposal at 23546.) Defendants contend that plaintiff's trade secret misappropriation claim is preempted by the Copyright Act. The Copyright Act does not preempt plaintiff's trade secret claim under OUTSA because that claim requires proof of different or extra elements than required by the federal statute. *Cleveland Clinic Found. v. Studer*, No. 1:12CV1999, 2013 WL 2367861, at *3 (N.D. Ohio May 29, 2013) (citing *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 456 (6th Cir. 2001)).

of its proprietary status and one of the steps Champion took to preserve the proposal's confidentiality. (2012 proposal at 23543.) But trade secret status is defined by law in Ohio; a confidentiality label alone does not make information a trade secret. *See Thermodyn*, 593 F. Supp. 2d at 987 (rejecting argument that information is a trade secret simply because it was so labelled in a confidentiality agreement). Moreover, the Court notes that the same confidentiality language appears on Champion's 2013 proposal (Doc. No. 594-5 ["Champion 2013 proposal"] at 43413), which Champion concedes is a public record (*see* Doc. No. 357 at 15237).

State contract bidders do not automatically waive trade secret protection by including trade secrets in their bid. *See State ex rel. Fisher v. PRC Pub. Sector*, 650 N.E.2d 945, 947-48 (Ohio Ct. App. 1994) (trade secret protection is not lost merely because the information is included in an application or proposal). Indeed, Ohio's Public Records Act exempts from disclosure "[r]ecords the release of which is prohibited by state or federal law." *Salemi v. Cleveland Metroparks*, 49 N.E.3d 1296, 1301 (Ohio 2016) (quoting Ohio Rev. Code § 149.43(A)(1)(v)). "Trade secrets are exempt from disclosure pursuant to this provision." *Id.* (citing *Besser,* 732 N.E.2d at 377).

The OAFB's 2012 and 2013 summer food programs are governed by the Governor's Faith Based and Community Initiative Subgrant ("GFBCIS") Agreements. Those agreements apply Ohio's public records laws to the OAFB's summer programs.

(*See* Doc Nos. 546-14 at 30073-74, (2012 GFBCIS Agreement Article VII), and 546-8 at 29665-66 (2013 GFBCIS Agreement Article VII).)[9]

Defendants made a public records request to the Governor's office for Champion's 2012 proposal and Champion's menus and pricing for its 2013 proposal, among other information related to those proposals. (Doc. No. 527-72 at 23815-16 ["3/27/2014 Ltr."] and 23812-14 ["6/6/2014 Ltr."].) The state entity holding the public records is responsible for making the determination as to whether the records sought are lawfully excepted from disclosure under Ohio's public records law. *See Fisher*, 650 N.E.2d at 948; *Salemi*, 49 N.E.3d at 1302.

Responding to defendants' public records request, the Governor's office provided defendants with Champion's 2013 proposal for the summer backpack program, which as noted earlier, plaintiff concedes is a public record. (Doc. No. 527-72 at 23820-56.) With respect to the 2012 proposal, the Governor's office indicated that "we already provided you with responsive records that we had." (Doc. No. 527-72 at 23821.) It is unclear what was provided, but the Governor's office does not state, and there is no evidence in the record, that the 2012 proposal was withheld in response to defendants' public records request because it was a trade secret and excepted from disclosure under Ohio's public records laws.

---

[9] Champion acknowledges the applicability of Ohio's public records law to information regarding the OAFB's summer food programs. (*See* Doc. No. 546-7 at 29613 (Oct. 28, 2013 email from G. Taft to M. Schrader) ("As you know, the OAF has the obligation to produce the records pursuant to its agreement with the Ohio Governor's office, as public records, because the OAF receives public funding."); Doc. No. 546-18 at 31103 (Champion requested a copy of Vista's 2013 proposal from the OAFB "since the monies were awarded through the State of Ohio").) With respect to the use of public monies, Champion was paid by the OAFB for performance of the 2012 contract. (*See* Doc. No. 568-21 at 37065-67.)

16

Moreover, Champion does not dispute that its meals and packaging with respect to the 2012 OAFB summer backpack program are not trade secrets. Weithman and Niecewicz, Champion's Rule 30(b)(6) witnesses, testified that the meals delivered in connection with the 2012 OAFB program were not confidential and proprietary, including the individual food items comprising the meals and clear packaging—the products and nutritional information were visible to everyone and could be reverse engineered and duplicated. (Doc. No. 589-1 (Rule 30(b)(6) Liability Deposition of Tyrone Weithman August 4, 2015 ["Weithman Liability Dep."]) at 40469; Doc. No. 594-1 (Rule 30(b)(6) Liability Deposition of Neicewicz August 5, 2015 ["Nicewicz Liability Dep."]) at 43390-91.)

With respect to Champion's argument that the 2012 proposal had economic value because Gibson used the 2012 proposal as a template to prepare Vista's 2013 proposal, and knowledge of Champion's 2012 prices would enable a competitor to match those prices,[10] as discussed *supra*, pricing in proposals is subject to disclosure under Ohio's public records law. In any event, Vista did not match Champion's pricing, but submitted a higher price. (Doc. No. 538-1 (Deposition of Carol Whitmer ["Whitmer Dep."] at 27647.) With respect to template format, to the extent that the formats of Champion's and Vista's 2013 proposals are similar to the 2012 proposal, there is no dispute that both 2013 proposals, including the format of the proposals, are public records.

Based on the undisputed record before the Court on summary judgment, no reasonable jury could conclude that the 2012 proposal is a trade secret and not a public

---

[10] Pl. Mot. at 22803.

17

record subject to disclosure under Ohio law. Information publicly disclosed is not a trade secret. *Heartland,* 258 F. App'x at 862.

The existence of a trade secret is the first of three elements that plaintiff must establish to prove a claim for trade secret misappropriation of the 2012 proposal. *Id.* at 861. Because Champion cannot establish an essential element of its claim, defendants are entitled to summary judgment on Champion's claim of misappropriation of the 2012 proposal. *Celotex,* 477 U.S. at 322-23.

### 2. Use of developmentally impaired workers (Lott Industries) and packaging design (Skybox Packaging)

Skybox Packaging ("Skybox") and Lott Industries, Inc. ("Lott") are vendors that were utilized by Vista in connection with its 2013 proposal to the OAFB. With respect to this alleged trade secret, Champion contends that while Gibson administered the 2012 contract, he learned that the OAFB had a "problem" with the packaging. Champion claims that Gibson developed solutions to those problems before he resigned from Champion, and that the information he developed is Champion's trade secret. Champion alleges that Gibson misappropriated these trade secrets when he did not share that information with Champion, but instead used the information for Vista's 2013 bid. In support of its motion for summary judgment on this misappropriation claim, Champion advances the affidavit of Weithman. (Weithman Aff. ¶¶ 22-23, 36-37.)

While finding no fault with Champion's performance of the 2012 contract, the OAFB learned from its experience with the 2012 summer backpack program that a significant amount of labor was required for OAFB employees to bag the food products for distribution, and Whitmer conveyed to Gibson that having the food products pre-

18

bagged would be helpful. (Whitmer Dep. at 27706-07.) Thus, with respect to the 2013 bid, the OAFB decided that "we wanted the bagging to be done by whatever vendor we chose." (*Id*. at 27642.)

It is undisputed that, in January 2013, Gibson met with Lott in Toledo, Ohio regarding the use of developmentally disable workers to hand package food products. Lott is an Ohio based non-profit, incorporated in 1956, that employs developmentally disabled workers in its hand packaging operation. (Doc. No. 541-3 (Declaration of Timothy Menke ["Menke Dec."]) ¶¶ 2-6, 9.) It is also undisputed that Champion never worked with Lott or utilized its workers for hand packaging food for OAFB contracts. (Menke Dec. ¶ 7.) The use of developmentally disabled workers for hand packaging is Lott's business model, not Champion's trade secret under Ohio law. *See The Plain Dealer*, 687 N.E.2d at 672.

With respect to the specific packaging design used by Vista in its proposal, the parties dispute whether Gibson developed Vista's packaging before or after he resigned from Champion. But there is no dispute that the "Champ's pack"—Champion's vendor-bagged packaging design for the OAFB—is not the same as Vista's, the latter of which used "off the shelf" materials for packaging that would be compatible with Lott's hand packaging operation. (*See* Doc. No. 546-4 at 29523; Nicewicz Liability Dep. at 43343-44; Menke Dec. ¶ 10.) There is no evidence in the record that Champion previously used the packaging design that was used by Vista in its 2013 proposal to the OAFB.

While the OAFB conveyed to Gibson a preference for vendor bagging, there is no evidence in the record that the OAFB conveyed a preference that meals be hand-packed

19

by developmentally disabled workers, or for a specific type of vendor-bagged packaging. Moreover, after the OAFB narrowed down the 2013 summer backpack proposals to two—Champion and Vista—it was the Governor's office, not the OAFB, that favored Vista's hand-packed design. (Whitmer Dep. at 27564.)

Plaintiff argues that Gibson's ideas about using Lott workers and compatible packaging are Champion's trade secrets with demonstrated economic value because "both were the primary reasons why the OAFB awarded the 2013 contract to Vista." (Pl. Mot. at 28802.) With respect to the security measures taken by Champion to protect the confidentiality of these purported trade secrets, plaintiff ironically bootstraps Gibson's alleged wrongdoing into evidence of Champion's security measures—"Gibson did not share the information about developmentally impaired workers or OAFB's packaging preferences (other than with his co-conspirators)." (Pl. Mot. at 22803; Weithman Aff. ¶ 22.)

Plaintiff's reply in support of its summary judgment motion clarifies the real issue with respect to this misappropriation claim—"Gibson developed that information while he worked exclusively for Champion, and it rightfully belongs to Champion." (Pl. Reply at 37242.) Champion's contention that Gibson was legally obligated to provide his ideas to Champion, and not to Vista, is an entirely different issue from whether the use of developmentally disabled workers and compatible packaging for the OAFB summer backpack program constitutes a trade secret.

Even if Champion were to establish that Gibson breached his fiduciary duty by using his ideas for Vista's bid and not Champion's bid, Champion's trade secret claim

would still fail. Champion has advanced no evidence under the *The Plain Dealer* analysis from which a reasonable juror could conclude that the use of Lott workers for hand packing, or the compatible packaging utilized by Vista in its 2013 proposal, constitutes Champion's trade secret under Ohio law. *See The Plain Dealer,* 687 N.E.2d at 672.

In the absence of a trade secret, Champion cannot establish an essential element of its misappropriation of trade secrets claim with respect to the use of Lott workers and packaging. Thus, defendants are entitled to summary judgment on this misappropriation claim. *Celotex,* 477 U.S. at 322-23.

### 3. Champion's compilation database

Plaintiff alleges that the defendants misappropriated Champion's compilation database "when Gibson copied to the laptop over 25,000 Champion files, which was in addition to the tens of thousands of files already on the laptop computer." (Pl Mot. at 22802.) "Champion's compilation database was discovered in Gibson's possession on Gibson's Toshiba hard drive, which contained a partial copy of the laptop." (*Id.* (citing Ex. 68 at 2, ¶ 2).)

The items that Champion alleges constitute its "compilation database" are listed in paragraph 2 of a letter dated April 14, 2014 from Champion's counsel to defendants' counsel. (Pl. Mot at 22802; Doc. No. 527-68 (April 14, 2014 letter from Attorney R. Guy Taft to defendants' counsel regarding Supplemental Identification of Trade Secrets ["4/14/2014 Taft Letter"]); *see also* Doc. No. 477 at 20104.) This list consists of 10 directories containing more than 50,000 files.

21

Champion avers that it spent years compiling the information in the database, which goes back as far as its predecessor company, GoFast, and took reasonable measures to protect the information. (Weithman Aff. ¶¶ 40-46.) As to the content of the database, Weithman avers that:

> Among other things, Champion's compilation trade secret database of documents consists of extensive product documentation, customer lists with contact information, supplier lists with contact information, detailed pricing documents that include pricing per product, menus and other product details, employee contact lists with our employee's personal information, profit-and-loss information, point-of-sale documents, and nutritionals.

(Weithman Aff. ¶ 39.)

Plaintiff filed under seal a portion of the individual files that comprise plaintiff's purported trade secret compilation database. These files contain customer lists and contacts, pricing information, and a list of Champion's employees and personal contact information. (*See* Doc. No. 572-81 ¶ 3 and Doc. No. 573-3.[11]) Champion does not appear to contend that every item in the database constitutes a trade secret, but that the database is a mix of secret and non-secret information entitled to trade secret protection. (Pl. Mot. at 22802 (citing *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 411 (6th Cir. 2006).

In *Mike's Train House*, the plaintiff maintained that its design drawing and engineering plans are prima facie trade secrets, but conceded that the drawings contained some publicly known information. *Mike's Train House*, 472 F.3d at 410. The defendant

---

[11] Any reference to or citation by the Court herein to documents that are filed under seal pursuant to a protective order is for internal use by the Court and the Court of Appeals should this opinion be appealed, and not intended as a reference for or use by others, except to the extent provided by the Court's orders regarding the use of confidential information.

22

in that case argued that the plaintiff must specifically identify within the drawing and plans the portions that constitute a trade secret.

In analyzing this issue, the Sixth Circuit considered *3M v. Pribyl,* 250 F.3d 587 (7th Cir. 2001), which provides that "[a] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Mike's Train House,* 472 F.3d at 410-11 (quoting *3M v. Pribyl,* 250 F.3d at 595-96). Finding *3M* to be consistent with cases in the Sixth Circuit and other circuits, the court in *Mike's Train House* found the Seventh Circuit's reasoning to be persuasive: "When material such as design drawings or manuals are trade secrets based on a unique combination of both protected an unprotected material, a plaintiff should not be obligated to identify which components of the protected material is secret." *Mike's Train House*, 472 F.3d at 411.

Champion contends that *Mike's Train House* does not require it to separately identify which components of the database are secret. This is true, but *Mike's Train House* does not stand for the proposition that a mixture of secret and public information automatically renders the entire combination a trade secret. Whether some, all, or none of the files in the "database" individually constitutes a trade secret is not the issue. The issue is whether the database itself—taken as a whole—qualifies for trade secret status, regardless of the trade secret status of any individual file. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Envtl. Prot. Agency*, 724 N.E.2d 411, 419 (Ohio 2000) ("Where documents already in the public domain are combined to form a larger document, a trade

23

secret may exist if the *unified result* would afford a party a competitive advantage.") (emphasis added) (quoting *The Plain Dealer*, 687 N.E.2d at 674-675) (further case citation omitted); *Novak v. Farneman*, No. 2:10-CV-768, 2010 WL 4643002, at *4 (S.D. Ohio Nov. 9, 2010) ("a new combination of known steps or processes can be entitled to trade-secret protection" (quoting *Mike's Train House*, 472 F.3d at 411).

Databases of information can be trade secrets under Ohio law. For example, in *Mack Trucks, Inc. v. Motor Vehicle Dealers Bd.*, No. 05AP-768, 2006 WL 1495122, (Ohio Ct. App. June 1, 2006), the court of appeals found that Mack's parts assembly database—which cost 34 million dollars to develop, contained the specifications for every Mack vehicle, the assembly record for each custom vehicle, and parts used for each vehicle—had independent economic value and was a trade secret because, without the database, a competitor would be unable to determine the parts needed or how to repair these vehicles. *Mack Trucks,* 2009 WL 1495122, at *6.

In order to establish that the database itself is a trade secret, Champion must show that the unique combination or unified result of the directories and files comprising the database, taken as a whole, affords Champion with a competitive economic advantage not publicly known. *See Mike's Train House,* 472 F.3d at 410-11; *Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, No. 2:08-cv-390, 2011 WL 3652696, at *2 (S.D. Ohio Aug. 18, 2011) (citing *Mike's Train House*, 472 F.3d at 411). This requires consideration of whether the unique combination or unified result of the individual files in the database is known outside the business, and the value of that information against competitors. As stated in another case from this district: "Surely, there are many types of information that

are generally known to the public that would still be invaluable to a competitor. Furthermore, not all information that is not generally known to the public acquires independent economic value from that fact. And, conversely, not all information that has independent economic value is generally unknown to the public." *Jaro Transp. Servs., Inc. v. Grandy*, No. 4:03-CV-01227, 2006 WL 2553424, at *13 (N.D. Ohio Sept. 5, 2006);[12] *see also Dayton Superior Corp. v. Yan*, No. 3:12-CV-380, 2013 WL 1694838, at *13 (S.D. Ohio Apr. 18, 2013) (ownership of an epoxy formula, alone, is not evidence that the formula has independent economic value).[13]

Champion has advanced no evidence as to how the unique combination of the database files—taken as a whole—constitutes information not readily available to the public or within the industry, or how this unified combination of information provides Champion with a competitive economic advantage within the industry. Champion simply describes the nature of the files in database, avers that some of the files in the database are trade secrets and some are not, and states that Champion compiled these files over the years. (Weithman Aff. ¶¶ 39, 40.) "Conclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status." *Arnos v. MedCorp.*, No. L-09-1248, 2010 WL 1730139, at *3 (Ohio

---

[12] Citing *Besser*, 732. N.E.2d 373 (documents relating to draft contracts, bids, and letters of negotiations are not trade secrets for lack of showing of any independent economic value); *Jacono v. Incacare Corp.*, No. 86605, 2006 Ohio App. LEXIS 1501 (Ohio Ct. App. 2006) (projected sale, cost data, pricing and manufacturing costs, terminology, data configurations and devices used in unique marketing plans are not trade secrets because they are already obsolete, or were not shown not to be used by, or available to, competitors); *Hildreth*, 785 N.E.2d 774 (manufacturing processes readily ascertainable to the public and customer and vendor lists are already in the public domain).

[13] Even customer lists do not automatically earn trade secret status. To be a trade secret, a customer list must contain more than a list of names available through ordinary business channels or trade directories, but must contain information not generally known to or readily ascertainable by the public through ordinary business channels or through business or trade directories. *Salemi*, 49 N.E.3d at 1302 (citations omitted).

Ct. App. Apr. 30, 2010) (citing *Besser*, 732 N.E.2d at 381); *In re Deliverance Christian Church*, No. 11-62306, 2011 WL 6019359, at *2 (Bankr. N.D. Ohio Dec. 1, 2011) (quoting *Arnos*, 2010 WL 1730139, at *3) (further citation omitted).

Plaintiff's conclusory averments regarding the database are insufficient to establish trade secret status under Ohio law, and do not form a basis upon which a reasonable jury could conclude that the database constitutes a trade secret under Ohio law. Thus, Champion cannot establish an essential element of its misappropriation of trade secrets claim with respect to the compilation database, and defendants are entitled to summary judgment on this misappropriation claim. *Celotex,* 477 U.S. at 322-23.

For all of the foregoing reasons, defendants' motions for summary judgment on plaintiff's second claim for relief—misappropriation of trade secrets—is granted.

**D. Tortious Interference—Third Claim for Relief**

Champion claims that Gibson, acting in concert with the other defendants, intentionally interfered with plaintiff's business relationship with its customers by using Champion's trade secrets and proprietary information to divert business away from plaintiff. (SAC ¶ 44.) Champion alleges that as a result of defendants' tortious conduct, plaintiff was not awarded the OAFB's contracts for the 2013 summer backpack program, or the 2014 summer backpack and IMD programs. (*See* SAC ¶¶ 44, 119.)

 "The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom." *See ActionLink, LLC v. Sorgenfrei*, No. 5:08CV2565, 2010 WL

26

395243, at *8 (N.D. Ohio Jan. 27, 2010) (quoting *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008)). In order to establish its claim for tortious interference, Champion must establish that it was damaged as a result of the alleged conduct. *Antioch Co. Litig. Trust v. Morgan*, No. 3:10-cv-156, 2014 WL 1365949, at *6 (S.D. Ohio Apr. 7, 2014), *aff'd,* 633 F. App'x 296 (6th Cir. 2015) (defendants entitled to summary judgment on tortious interference claim because plaintiff failed to establish damages).

The Court has previously ruled that Champion is precluded from introducing any testimony or evidence regarding lost profits with respect to the 2013 and 2014 OAFB contracts. (Doc. No. 683.) As a consequence, plaintiff cannot establish an essential element of its tortious interference claim, and defendants are entitled to summary judgment on plaintiff's third claim for relief. *Celotex,* 477 U.S. at 322-23.

**E. Fraud—Fourth Claim for Relief**

Plaintiff claims that Gibson committed fraud when, among other actions, he represented to Champion that: (1) he was preparing Champion's 2013 OAFB bid when he was not; and (2) he was working on Champion's business when was actually working for Vista. (*See* SAC ¶¶ 47-49.)

"The elements of fraud under Ohio law are: '(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the

27

reliance.'" *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 449 (6th Cir. 2012) (quoting *Gaines v. Preterm–Cleveland, Inc.,* 514 N.E.2d 709, 712 (Ohio 1987) (citations omitted)).

The elements of a fraud claim are conjunctive, and all of them must be shown. *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003) (citing *Schwartz v. Capital Sav. & Loan Co.,* 381 N.E.2d 957, 959 (Ohio Ct. App. 1978)). Champion claims that it was damaged by Gibson's fraud because it was not awarded the OAFB contracts for the 2013 summer backpack program and 2014 programs.

The Court has previously ruled that plaintiff is precluded from introducing testimony or evidence regarding its claim for lost profits for these three OAFB contracts. (MOO.) Thus, plaintiff cannot establish an essential element of its fraud claim, and defendants are entitled to summary judgment on plaintiff's fourth claim for relief. *Celotex,* 477 U.S. at 322-23.

## F. Conversion—Seventh Claim for Relief

Plaintiff alleges that Gibson converted the laptop, the information contained on the laptop, and keys to a company vehicle and Champion's facilities.[14] (SAC ¶¶ 62-64.) This claim asserts a factual basis based upon alleged misappropriation of Champion's information in the form of conversion, and upon other conduct unrelated to the information—laptop, keys, and vehicle. Such a "hybrid" claim is subject to a "partial

---

[14] The parties' motions regarding plaintiff's conversion claim focuses entirely on the laptop and information contained on the laptop. The parties' summary judgment briefs are silent with respect to plaintiff's claim for alleged conversion of Champion's keys to a vehicle and its facilities.

preemption" analysis under OUTSA. *See Office Depot, Inc. v. Impact Office Products, LLC*, 821 F. Supp. 2d 912, 920–21 (N.D. Ohio 2011) (citations omitted).

### 1. Information on the laptop

#### *OUSTA preemption*

Preemption by OUTSA for conversion of documents and information has been recognized by Ohio courts. *Thermodyn*, 593 F. Supp. 2d at 989 (citing *Midwest Energy Consultants, L.L.C. v. Utility Pipeline, Ltd.,* No. 06CA00048, 2006 WL 3423410, at *7 (Ohio Ct. App. Nov. 27, 2006)). In *Midwest Energy*, the court concluded that a conversion claim for documentary property which "inherently contains trade secrets" was "necessarily" preempted by OUTSA. *Midwest Energy*, 2006 WL 3423410, at *7. Champion disputes defendants' argument that its claim for conversion of non-trade-secret information on the laptop is preempted by OUTSA because "this claim encompasses only non-trade-secret information." (Pl. Reply at 37244 (citing *Thermodyn*, 593 F. Supp. 2d at 989).)

Ohio Rev. Code § 1333.67 provides that OUTSA preempts state law claims based on the same factual allegations of misappropriation of trade secrets. *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 730 (N.D. Ohio 1999) (Section 1333.67 "has been interpreted to bar claims which are based entirely on factual allegations of misappropriation of trade secrets."); *Thermodyn*, 593 F. Supp. 2d at 989 (citing *Glasstech,* 50 F. Supp. 2d at 730); *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015) (citing *Thermodyn*, 593 F. Supp. 2d at 989). OUTSA preemption is not limited to state law claims that only concern trade secrets. Section

29

1333.67(A) "was intended to prevent inconsistent theories of relief for the same underlying harm and has been interpreted to bar claims that are based solely on allegation of misappropriation of trade secrets *or other confidential information*." *Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.*, 936 N.E.2d 122, 130 (Ohio Ct. App. 2010) (emphasis added) (citing *Glasstech,* 50 F. Supp. 2d at 730). "[P]laintiffs alleging theft or misuse of their ideas, data, or other commercially valuable information are confined to the single cause of action provided by the UTSA." *Id.* (quoting *Hauck Mfg. Co. v. Astec Ind., Inc.,* 375 F. Supp. 2d 649, 659 (E.D. Tenn. 2004)); *see also Office Depot,* 821 F. Supp. 2d at 919 (citing *Rogers*, 936 N.E.2d at 130).

Plaintiff alleges in its conversion claim that "Champion is the owner of its proprietary and confidential trade secret information contained in the laptop computer, and Defendants have intentionally withheld from Champion its confidential business information[]" and "have wrongfully exercised control and dominion over Champion's property (its computer and information), and have destroyed certain of Champion's property through the intentional deletion of electronic files and information."[15] (SAC ¶¶

---

[15] To the extent that the "intentional deletion" language of plaintiff's claim for conversion of Champion's information on the laptop also constitutes a claim for spoliation, the Court has already found that defendants are entitled to judgment on plaintiff's spoliation claims. (*See* FOF & COL.)

63, 64.) This allegation arises out of the same core facts underlying plaintiff's misappropriation of trade secrets claim.[16]

Plaintiff's conversion claim with respect to Champion's business and proprietary information on the laptop is preempted by OUTSA. *Rogers,* 936 N.E.2d at 130.

### *Preclusion of damages*

Even if plaintiff's claim for conversion of Champion's information on the laptop were not preempted by OUTSA, defendants would still be entitled to summary judgment on this claim. The damages claimed by plaintiff with respect to defendants' alleged conversion of Champion's information on the laptop are lost profits from the OAFB contracts at issue in this case. (*See* SAC ¶ 20; *see also* Doc. No. 434 (Transcript of Proceedings before Magistrate Judge Limbert May 5, 2015 ["5/15/2015 Tr."] at 19708-09; Weithman Aff. ¶ 21.) The final element of a conversion claim is damages. *See 6750 BMS, L.L.C. v. Drentlau*, --- N.E.3d ---, 2016 WL 1295938, at *5 (Ohio Ct. App. Mar. 31, 2016) (citing *Dream Makers v. Marshek,* No. 81249, 2002 WL 31839190, at *4 (Ohio Ct. App. Dec. 19, 2002)). Because Champion is precluded from introducing any testimony or evidence regarding lost profit damages with respect to the OAFB contracts,

---

[16] Plaintiff's second claim for relief alleges that:

> 37. Proprietary and confidential information belonging to Champion, including, but not limited to, company pricing lists, labor costs, packing costs, product costs, business markups, shipping costs, marketing costs, customer lists, active quotes, and business correspondence are "trade secrets" as defined by R.C. 1333.61(D).

> 38. Gibson acquired knowledge of, access to, and possession of those trade secrets through his business relationship with Champion as President and CEO. Defendants Vista and Newman also acquired trade secrets from Champion and Gibson.

(SAC ¶¶ 37-38.)

plaintiff cannot establish an essential element of its claim for conversion of Champion's information on the laptop. (See Doc. No. 683.)  Thus, defendants would also be entitled to summary judgment as a matter of law on plaintiff's claim for conversion of information on the laptop on this basis. *Celotex,* 477 U.S. at 322-23.

For the foregoing reasons, defendants' motions for summary judgment on the plaintiff's claim for conversion of information contained on the laptop, is granted, and plaintiff's motion on this claim is denied.

### 2. The laptop

It is undisputed that when Gibson resigned from Champion on February 26, 2013, Gibson was in possession of the laptop. Plaintiff's conversion claim regarding the laptop is entirely distinct from plaintiff's trade secret misappropriation claim. Thus, this aspect of plaintiff's conversion claim is not preempted by OUTSA.[17] *See Office Depot*, 821 F. Supp. 2d at 920-21.

Under Ohio law, conversion is defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. General Motors Corp.,* 551 N.E.2d 172, 175 (Ohio 1990). "The elements of a conversion claim include (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *6750 BMS*, 2016 WL 1295938, at *5 (citing *Dream Makers*, 2002 WL 31839190, at *4). "If the defendant came into possession of the property lawfully, the

---

[17] Defendants concede that conversion of the laptop is not preempted by OUTSA. (Gibson Mot. at 28312.)

plaintiff must prove two additional elements to establish conversion: (1) that the plaintiff demanded the return of the property after the defendant exercised dominion or control over the property; and (2) that the defendant refused to deliver the property to the plaintiff." *Id.* (citing *R&S Distrib., Inc. v. Hartge Smith Nonwovens, L.L.C.*, No. C-090100, 2010 WL 33658002010, at *4 (Ohio Ct. App. Aug. 27, 2010)). "The measure of damages in a conversion action is the value of the converted property at the time it was converted." *Id.* (citing *Tabar v. Charlie's Towing Serv.,* 646 N.E.2d 1132, 1136 (Ohio Ct. App.)).

In this case, the parties do not dispute that Gibson properly acquired the laptop in the first instance. Thus, the demand and refusal elements are conditional and necessary. *Id.* When Gibson resigned, it is undisputed that Champion demanded return of the laptop, keys, and vehicle. (Doc. No. 527-3.) It is also undisputed that Gibson did not return the laptop until March 7, 2013, after a state court hearing in Crawford County, Ohio.

That is where the parties' agreement ends. Champion contends that it gave the laptop to Gibson for use in connection with his work for Champion, and Gibson contends that Weithman gave him the laptop outright. (Gibson Dep. at 6453; Weithman Aff. ¶ 17.)

The issue of ownership of the laptop is an essential element of plaintiff's conversion claim. The ownership of the laptop is disputed. Therefore, summary judgment on this claim is not appropriate since a reasonable jury could find in favor of either party on this issue.

Accordingly, the motions for summary judgment with respect to conversion of the laptop (to the extent that the claim for conversion does not include spoliation), between

the date of Gibson's resignation and the date the laptop was returned to Champion, are denied.

## G. Civil Conspiracy—Fifth Claim for Relief

Champion claims that all defendants conspired to commit all of the wrongful acts alleged in plaintiff's other claims for relief. (SAC ¶¶ 54-55.)

> "In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Universal Coach, Inc. v. New York City Transit Auth., Inc.,* 90 Ohio App.3d 284, 629 N.E.2d 28, 33 (1993) (citations omitted). A plaintiff need not demonstrate an explicit agreement but only an understanding or common design between the parties to commit an improper act. *Gosden v. Louis,* 116 Ohio App.3d 195, 687 N.E.2d 481, 496 (1996) (citations omitted). "The ultimate fact of conspiracy is solely a question for the jury, unless the court can say, as a matter of law, that there is no proof tending to establish a conspiracy." *LeFort v. Century 21– Maitland Realty & Co.,* 32 Ohio St.3d 121, 512 N.E.2d 640, 645 (1987) (citations omitted).

*Lee*, 692 F.3d at 446.

In order to establish a claim for conspiracy, plaintiff must first establish the existence of an unlawful act independent of the conspiracy. *Lee*, 692 F.3d at 446 (citation omitted). For the reasons discussed, *supra*, the Court grants summary judgment in favor of defendants and against plaintiff with respect to plaintiff's claim for breach of fiduciary duty, misappropriation of trade secrets, tortious interference, and fraud. The Court has also concluded that plaintiff's claim for conversion of Champion's information on the laptop is preempted by OUTSA, and that defendants are entitled to summary judgment on that portion of plaintiff's conversion claim. In addition, the Court has found in a separately filed opinion that plaintiff has failed to prove its claims for spoliation under

34

Ohio law, and that defendants are entitled to judgment against plaintiff with respect to spoliation. (*See* FOF & COL.)

Thus, with respect to plaintiff's claims for breach of fiduciary duty, misappropriation of trade secrets, tortious interference, fraud, conversion of Champion's business information, and spoliation, plaintiff cannot establish the existence of an unlawful act independent of the alleged conspiracy, and therefore, cannot establish an essential element of civil conspiracy with respect to those claims. *See Lee*, 692 F.3d at 446 (citation omitted). Defendants, therefore, are entitled to judgment in their favor as a matter of law on these claims. *Celotex,* 477 U.S. at 322-23.

With respect to plaintiff's claim for conspiracy regarding conversion of the laptop itself (to the extent that it does not include spoliation), plaintiff's motion for summary judgment does not specifically identify the undisputed evidence that plaintiff claims entitles it to judgment as a matter of law with respect to this conspiracy claim. (*See* Pl. Mot.at 22806.) Plaintiff argues that the defendants' spoliation has deprived Champion of direct evidence of defendants' conspiracy,[18] but advances the cell phone records of Gibson and Newman, which plaintiff contends "reveal[s] the conspiracy in detail. (*Id.* at 22806-07 (citing Exs. 77 and 38).) According to plaintiff, these records evidence the conspiracy because they show that "Newman and Gibson were talking to each other at the time of Gibson's tortious acts. (*Id.* at 22807-08.)

---

[18] As noted earlier in this opinion, the Court has found that defendants are entitled to judgment on plaintiff's spoliation claim. (*See* FOF & COL.)

Rule 56 requires the plaintiff to support its motion with evidence which demonstrates that there is an absence of a genuine dispute as to any material fact and that the plaintiff is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 250. More than a scintilla of evidence is required to support summary judgment. *See Garza*, F. App'x 536 F. App'x at 519 (citation omitted.) The phone records advanced by plaintiff do not reveal the content of these calls, and Champion does not contend that they do. As the Court found in an earlier ruling, Gibson and Newman were friends and business associates, and in "constant communication." (FOF & COL at 53785.) Plaintiff has not introduced any evidence regarding the content of the telephone calls that could support a conclusion that the defendants conspired to convert the laptop computer.

Even if plaintiff succeeds at trial on the merits of its claim for conversion of the computer, there is no evidence in the record on summary judgment from which plaintiff could establish the balance of the elements of its conspiracy claim as to conversion of the laptop computer. In the absence of even a scintilla of evidence to support Champion's motion for summary judgment on its claim for conspiracy to convert the laptop, plaintiff's motion must be denied. *See Garza*, F. App'x 536 F. App'x at 519.

Defendants generally seek summary judgment on all of plaintiff's claims on the grounds that they are baseless and without evidentiary support. Plaintiff has advanced no evidentiary support from which, if believed, a reasonable jury could find in favor of plaintiff with respect to is claim for conspiracy to convert the laptop. Accordingly,

defendants' motion for summary judgment on plaintiff's claim for conspiracy to convert the laptop is granted, and the plaintiff's motion on this claim is denied.

## H. The Gibson Defendants' Counterclaim

In response to plaintiff's SAC, the Gibson defendants assert counterclaims for breach of contract (counterclaim B), unjust enrichment/quantum meruit (counterclaim C), indemnification (counterclaim D), and bad faith litigation.[19] (Doc. No. 447 ["Counterclaim"] at 19866-70.) Champion moves for summary judgment on all of Gibson's counterclaims, and the Gibson defendants move for summary judgment on their counterclaims with respect to unpaid sales commissions. Because the parties' motions for summary judgment and the Gibson defendants' motion to amend the counterclaim are intertwined, the Court will consider those motions together.

### 1. Breach of contract/unjust enrichment

For his breach of contract counterclaim, Gibson alleges that Champion promised to pay Gibson an annual salary plus commissions "at the rate of 8% of gross profits after freight, commensurate with his sales performance." (Counterclaim at 19867, ¶ 5.) Gibson claims that Champion has not paid the commissions in breach of his agreement with Champion, and has not reimbursed Gibson for expenses. By not paying his commissions

---

[19] Gibson alleges that Champion's claim for misappropriation of trade secrets was brought in bad faith because Champion freely shared its information with Gibson and others without restriction or any agreement to maintain the information as confidential, and because Champion knew that the information did not constitute a trade secret. Gibson claims that he is entitled to attorney fees pursuant to Ohio Rev. Code § 1333.64 because Champion brought its misappropriation claim in bad faith, causing Gibson to incur legal fees and expenses. (Counterclaim at 19869-70.) At the hearing on the parties' motions for sanctions, the parties agreed to withdraw their motions with respect to bad faith litigation. (Tr. at 45900, 45919.) It is the Court's understanding that this withdrawal included Gibson's counterclaim for bad faith litigation.

and reimbursing his expenses incurred in securing sales for Champion, Champion has been unjustly enriched. (Counterclaim at 19866-68.) Gibson's breach of contract and unjust enrichment counterclaims with respect to unpaid sales commission and expenses are related, therefore, the Court will consider them together.

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012) (citing, among authorities, *Savedoff*, 524 F.3d at 762).

A contract is a promise or set of promises actionable upon breach, and can be express or implied. "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926, 935 (Ohio Ct. App. 2007) (citations omitted).

> In an express contract, the parties assent to the terms as actually expressed through the offer and acceptance. In a contract implied in fact, the meeting of the minds is shown by the surrounding circumstances that demonstrate that a contract exists as a matter of tacit understanding. In contracts implied in law, civil liability attaches by operation of law upon a person who receives benefits that he is not entitled to retain. Contracts implied in law are not true contracts, but quasi-contracts or constructive contracts that courts impose to prevent unjust enrichment.

*Id*. at 934 (internal case citations omitted).

The elements of unjust enrichment are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 898 (N.D. Ohio

38

2009) (citing *Hambleton v. R.G. Barry Corp.,* 465 N.E.2d 1298, 1302 (Ohio 1984)).

Champion argues that it is entitled to summary judgment on Gibson's breach of contract and unjust enrichment counterclaims because Gibson cannot establish the required elements of these counterclaims.[20] First, Champion argues that it is undisputed that there is no formal agreement between Gibson and Champion, therefore Gibson cannot establish a claim for breach of contract. This is not the law in Ohio—a single formal written agreement is not required for a breach of contract claim. *See e.g. Frank Novak & Sons, Inc. v. A-Team, L.L.C.*, 6 N.E.3d 1242, 1250 (Ohio Ct. App. 2014) (meeting of the minds may be reached through an oral agreement).

The parties do not dispute that the relationship between Champion and Gibson—whatever form that relationship took—lasted approximately two years and involved Gibson obtaining sales (including the 2012 contract) and performing other duties related to Champion's business. Gibson did not agree to work for free, and there is no dispute that Champion paid Innovative for Gibson's work related to Champion. The only dispute is as to the amount of compensation due.

Gibson points to a series of emails between himself and Weithman regarding compensation arrangements, in which both salary and commissions were discussed.

_____

[20] Champion also provides the Court with numerous examples of statements made by Gibson regarding the promises made by Weithman concerning Gibson's compensation, and argues that Champion is not responsible for Weithman's statements. (Pl. Mot. at 22809.) This argument is not persuasive in support of Champion's motion for summary judgment on Gibson's counterclaim. The parties do not dispute that Weithman is a principal at Champion who hired Gibson to work for Champion and acted as his supervisor, and there is nothing in the record to suggest that Weithman's alleged statements regarding Gibson's compensation were made other than on behalf of Champion.

(Gibson Opp'n at 36691 (citing Exs. 53-54 (Doc. No. 546-13 at 29837-43)).) A reduced

salary with payment of commissions was proposed by Weithman:

> We just terminated two similar agreements with high base salaries with no
> commissions. As you know, that type of arrangement did not work out
> well for us.
>
> Considering the state of the company, and our past experience, I would
> much rather structure something with a lower base salary that would
> include sales commissions. I am sure you are confident in your ability to
> bring in sales . . . . Obviously cash flow is a concern for our ramping back
> up and parties compensation based on sales would certainly help.

(Doc. No. 546-13 at 29842 (Jan. 18, 2011 email from Weithman to Gibson).)

Weithman testified at his deposition that he and Gibson "agreed to a salary and

commission-based incentive[,]" and while there never was a formal agreement, the

original discussions were "*8 percent of gross sales—gross profits, I'm sorry*. There were

two e-mails sent back and forth. After that it was verbal and on the phone." (Doc. No.

368 (Deposition of Tyrone Weithman November 11, 2013 ["Weithman Dep."]) at 15666-

67 (emphasis added).)

This correction by Weithman goes directly to another argument raised by

Champion on summary judgment, and to Gibson's motion to amend his counterclaim.[21]

Pursuant to Fed. R. Civ. P. 15(b)(2) and Fed. R. Civ. P. 1, Gibson moves to amend his

breach of contract counterclaim as to commissions to state "gross sales" rather than

"gross profits" "in order to conform to the summary judgment evidence concerning

unpaid commissions[.]" (Gibson Rule 15 Mot. at 32284.)

---

[21] Somewhat ironically in light of Champion's lost profits claim, Champion argues on summary judgment
that Gibson is not entitled to "commissions at the rate of 8% of gross *profits*, after freight" on the grounds
that it is undisputed that Champion has never made a profit. (Pl. Mot. at 22810.)

In opposing the motion to amend, Champion argues that Rule 15(b)(2),[22] which permits amendment to conform to the evidence at trial, is not an appropriate vehicle for seeking amendment to conform to evidence on summary judgment, and that permitting amendment at this time would prejudice plaintiff and necessitate further discovery and motion practice. (Pl. Opp'n to Gibson Rule 15 Mot. at 32378-79.)

The Court agrees that it is not appropriate to use Rule 15(b)(2), which provides for amendment of pleadings during and after trial, to obtain an amendment to conform to evidence on summary judgment. Gibson's motion to amend his counterclaim for unpaid commission is denied. *See McColman v. St. Clair Cty.*, 479 F. App'x 1, 6 (6th Cir. 2012) ("By its plain terms, Rule 15(b)(2) only applies to claims that are tried, and this case was disposed of on summary judgment. Further, Doan did not consent to trying the handcuffing claim—he *objected* to the claim in both his motion for summary judgment and at oral argument on that motion. *Cf. Siler v. Webber,* 443 Fed. Appx. 50, 58 (6th Cir.2011) (holding that an issue cannot be tried by the parties' consent pursuant to Rule 15(b)(2) where one of the parties opposes trial by moving for summary judgment).").

That said, since it is unclear as to whether Gibson has been paid his commissions (based upon gross profits as alleged in his counterclaim) and reimbursed for his expenses,

---

[22] Fed. R. Civ. P. 15(b)(2) provides as follows:

**(b) Amendments During and After Trial.**

* * * *

**(2) *For Issues Tried by Consent.*** When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

the parties' motions for summary judgment on the Gibson defendants' counterclaims for breach of contract and unjust enrichment are denied.

### 2. Indemnification

The Gibson defendants seek indemnification from Champion pursuant to Ohio Rev. Code § 1705.32. Gibson pursues indemnification based on: (1) Champion's allegations that he is president and CEO of Champion; (2) that the operating agreement for plaintiff's predecessor, GoFast, LLC, provides that the company will indemnify pursuant to § 1705.32 any person sued because he was a member or manager of the company; and (3) that Champion has failed to produce an operating agreement, but has acknowledged that Champion's operating agreement contains similar language. (Counterclaim at 19868, ¶¶ 17-18.)

Champion moves for summary judgment on this counterclaim on the grounds that the factual bases upon which the counterclaim is asserted is not supported by the undisputed evidence in the record, and was brought in violation of this Court's order.[23] (Pl. Mot. at 22811.) Specifically, plaintiff advances that affidavit of Weithman, who avers that Champion does not have an operating agreement.[24] (Doc. No. 527-92 ¶3).

---

[23] The order at issue denied Gibson's motion for indemnification without prejudice as premature due to undeveloped facts, with permission to renew the motion at a later time with leave of Court. (Doc. No. 218 at 3231-32.) Gibson's assertion of indemnification as a counterclaim did not violate the Court's order requiring leave to reassert the motion.

[24] After plaintiff moved for summary judgment, the Gibson defendants moved to amend the counterclaim to withdraw the indemnification claim, without prejudice. (Gibson Opp'n at 36691; Gibson Mot. to Amend at 32287.) Gibson then filed another motion to withdraw his motion to amend relative to the indemnification claim. (Doc. No. 668.) Gibson's motion to withdraw his motion to amend the counterclaim is granted.

Gibson has advanced no evidence to the contrary. Moreover, there is no evidence that Gibson was a member of the limited liability company, which is defined by Ohio Rev. Code § 1705.01(G) as: "a person whose name appears on the records of the  limited liability company as the owner of a membership interest in the company." An LLC can be managed by managers instead of members if an operating agreement provides for managers. *See* Ohio Rev. Code. § 1705.29. This, however, brings the Court back to the starting point of the undisputed evidence that Champion does not have an operating agreement.

As the moving party, plaintiff has met the requirement of Rule 56 to provide evidence to the Court which demonstrates the absence of a genuine dispute as to any material fact. Champion having met this burden, the Gibson defendants must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 250.

The Gibson defendants have advanced no evidence as required by Rule 56 that demonstrates that there is a genuine issue of fact for trial with respect to the indemnification claim, and that Champion is not entitled to judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment on the Gibson defendants' counterclaim for indemnification is granted.

## III. CONCLUSION

For all of the foregoing reasons:

(1) Defendants' motions for summary judgment on plaintiff's first claim for relief—breach of fiduciary duty—are granted, and plaintiff's motion is denied.

(2) Defendants' motions for summary judgment on plaintiff's second claim for relief—misappropriation of trade secrets—are granted, and plaintiff's motion is denied.

(3) Defendants' motions for summary judgment on plaintiff's third claim for relief—tortious interference—are granted, and plaintiff's motion is denied.

(4) Defendants' motions for summary judgment on plaintiff's fourth claim for relief—fraud—are granted, and plaintiff's motion is denied.

(5) The parties' motions for summary judgment on plaintiff's seventh claim for relief—conversion—are granted in part and denied in part. Defendants' motions as to plaintiff's claim for conversion of information on the laptop is granted, and plaintiff's motion regarding the same is denied. The parties' motions as to conversion of the laptop (and vehicle and keys, to the extent the parties' sought summary judgment on these items) are denied.

(6) The defendants' motions for summary judgment on plaintiff's fifth claim for relief—civil conspiracy—are granted, and plaintiff's motion is denied.(7) The parties' motions for summary judgment on the Gibson defendants' counterclaim for breach of contract and unjust enrichment are denied.

(8) The Gibson defendants' motion to amend the counterclaim with respect to the counterclaims for breach of contract and unjust enrichment is denied.

44

(9) The Gibson defendants' motion withdraw the motion to amend the counterclaim with respect to the indemnification counterclaim is granted.

(10) Plaintiff's motion for summary judgment on the Gibson defendants' counterclaim for indemnification is granted.

**IT IS SO ORDERED**.

Dated: August 24, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**